IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

EDWIN BANKS,

                    Plaintiff,                Civil Action No.
      v.                               9:14-CV-0340 (LEK/DEP)


ANTHONY ANNUCCI, Acting
Commissioner of DOCCS,

                    Defendant.

_____

APPEARANCES:

FOR PLAINTIFF:

EDWIN BANKS, *Pro Se*
03-B-1574
Attica Correctional Facility
Box 149
Attica, NY 14011

FOR DEFENDANT:

HON. ERIC T. SCHNEIDERMAN     NICOLE E. HAIMSON, ESQ.
New York State Attorney General   Assistant Attorney General
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

*Pro se* plaintiff Edwin Banks, a New York State prison inmate, has commenced this action against Anthony Annucci, the Acting Commissioner of the New York State Department of Corrections and Community Supervision ("DOCCS"), pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 alleging that Banks was subjected to various civil rights violations at the hands of DOCCS employees stationed at the Upstate Correctional Facility ("Upstate"), the facility in which he was confined at the relevant times. Plaintiff attributes the violations to a systemic failure on the part of defendant Annucci to adequately screen and train employees and accuses the defendant of "overseeing a culture of governmental corruption within DOCCS."

In response to plaintiff's complaint, defendant Annucci has moved for its dismissal for failure to state a claim upon which relief may be granted. Because plaintiff's complaint does not plausibly allege that defendant Annucci was personally involved in the alleged violations based on a theory of supervisory liability, I recommend that the defendant's motion be granted.

I.    BACKGROUND[1]

Plaintiff is a prison inmate currently being held in the custody of the DOCCS. *See generally* [Dkt. No. 1](). While he has since been transferred at least twice into other facilities, at all times relevant to the allegations set forth in his complaint, plaintiff was confined in Upstate, a maximum security prison, located in Malone, New York, comprised exclusively of special housing unit ("SHU') cells, in which inmates are confined for twenty-three hours each day, primarily for disciplinary reasons. *Id.* at 7; *see Samuels v. Selsky*, No. 01-CV-8235, 2002 WL 31040370, at *4 n.11 (S.D.N.Y. Sept. 12, 2002).[2]

Plaintiff's claims implicate events that occurred subsequent to his transfer into Upstate on or about April 25, 2013. [Dkt. No. 1 at 7](). Plaintiff alleges that, upon his arrival at that facility, he "was immediately singled out for harassment by staff" and that the harassment took several forms, including (1) tampering with his food; (2) the issuance of at least five false

---

[1]    In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964).

[2]    Copies of all unreported decisions cited to in this report have been appended for the convenience of the *pro se* plaintiff.

misbehavior reports; (3) due process deprivations in connection with disciplinary hearings; (4) denial of access to law library materials; (5) denial of access to the courts; and (6) interference with efforts to secure parole, including by providing inaccurate information to the parole review board. *Id.* at 7-23. Plaintiff contends that the foregoing offending conduct was triggered by his filing of a civil rights lawsuit in December 2013, against the DOCCS and certain Upstate staff members. *Id.* at 20-21. In particular, plaintiff alleges that the corrections employees at Upstate have retaliated against him for filing the lawsuit, noting that between April 2013 and December 2013 he received no misbehavior reports, whereas following the commencement of that earlier civil rights action, he was issued five allegedly false misbehavior reports within a two and one-half month period.[3] *Id.*

With respect to the allegations specifically lodged against defendant Annucci, plaintiff generally alleges that Annucci is responsible for

---

[3]   On December 5, 2013, plaintiff filed an action in this court against defendant Annucci and seventeen named individuals, as well as four "John Doe" defendants, seeking damages for denial of his civil rights while at Upstate. *Banks v. Rock*, No. 13-CV-1500 (N.D.N.Y. filed Dec. 5, 2013). While that suit remains pending, plaintiff's damage claim against defendant Annucci in that action was dismissed pursuant to 28 U.S.C. §§ 1915(e) and 1915A. *Rock*, No. 13-CV-1500, Dkt. No. 39. There is considerable overlap between the claims asserted in this action and those raised in plaintiff's previously filed action. *See generally id.* Claims brought by the plaintiff against defendant Annucci's predecessor, Brian Fischer in yet another action, were also dismissed. *Banks v. Fischer*, No. 14-CV-0999 (N.D.N.Y. filed Aug. 11, 2014).

acquiescing to a culture of corruption within the DOCCS and fosters an environment in which supervisors and corrections officers at DOCCS facilities are permitted to retaliate against inmates for exercising constitutional rights with immunity. *See generally* Dkt. No. 1 at 2-7, 8, 23-24.

Plaintiff's complaint seeks a declaration that his rights have been violated and an injunction directing defendant Annucci as follows:

a. to cease administering drugs to me through my foods,
b. cease contaminating my food,
c. to prevent officers from removing the siran wrap from prisoner[']s Kosher trays,
d. to create better policy and procedures to monitor the officers handling of prisoner foods,
e. to cease blowing toxic fumes through his cell ventilation system,
f. to cease all retaliation against me,
g. to create better policy and procedures for the selection, hiring, training, monitoring, investigating, and disciplining DOCCS' and it's [sic] facility staff, and appoint someone to oversee the process to ensure that it is properly carried out,
h. to preserve all video and audio recordings as evidence that I have F.O.I.L.ed, and of all meals going back 14 days from receipt of this complaint,
i. to cease denying me access to the law library,
j. to cease tampering with and interfering with my correspondence,
k. to prevent the parole Board from relying on the 5 fabricated misbehavior reports at my upcoming board,

> 101. Ordering a stay of all five (5) disciplinary hearing dispositions rendered against me between Dec. 2013 – March 2015,
> 102. Grant a temporary restraining order preventing the unauthorized re-appearance before the March 2014 parole board, the parole board from relying on the 5 fabricated misbehavior reports, and the officers from removing the siran wrap from prisoners Kosher trays, and from contaminating my food and administering drugs through it,
> 103. Any other additional relief this court deems just, proper, and equitable.

Dkt. No. 1 at 25-27.[4]

II.     PROCEDURAL HISTORY

Plaintiff commenced this action on or about March 27, 2014. Dkt. No. 1. Upon initial review of his complaint and accompanying application for leave to proceed *in forma pauperis*, Senior District Judge Lawrence E. Kahn issued a decision on June 19, 2014, dismissing plaintiff's complaint based upon a finding that plaintiff's complaint failed to set forth facts plausibly suggesting that defendant Annucci was personally involved in the constitutional deprivations alleged. Dkt. No. 11. On plaintiff's motion for reconsideration, however, the court subsequently vacated its decision, finding "that the Complaint alleges enough to warrant a responsive

---

[4]     Any request for relief that is directed toward the New York State Board of Parole is unavailable in light of the fact that plaintiff has not named that entity as a defendant, and there is no allegation that defendant Annucci, in his capacity as Acting Commissioner of the DOCCS, has any authoritative control over that entity.

pleading." Dkt. No. 24 at 5. In that decision, Judge Kahn specifically withheld any opinion as to whether plaintiff's complaint could withstand a properly filed motion to dismiss or for summary judgment. *Id.*

Plaintiff's complaint was met with the filing of a motion to dismiss by defendant Annucci on May 4, 2015. Dkt. No. 28. In his motion, defendant argues that (1) plaintiff's complaint fails to adequately allege his personal involvement in the constitutional deprivations alleged; (2) plaintiff's complaint fails to state a cognizable claim of retaliation, denial of court access, cruel and unusual punishment, or denial of the due process; (3) plaintiff lacks standing to seek relief on behalf of other inmates; and (4) plaintiff's request for an injunction is moot and should be denied as seeking relief that is vague and unenforceable. *See generally* Dkt. No. 28. Plaintiff has not responded to defendant's motion, which is now ripe for determination and has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

    A.   Standard of Review

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading using a standard which, though unexacting in its requirements, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. 677-78 (quoting Fed. R. Civ. P. 8(a)(2)). While modest in its requirements, that rule commands that a complaint contain more than mere legal conclusions. *See id.* at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *see also Cooper v. Pate*, 378

U.S. 546, 546 (1964); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). The tenet that a court must accept as true all of the allegations contained in a complaint does not apply, however, to legal conclusions. *Iqbal*, 556 U.S. at 678.

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge plaintiffs' claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570) (alterations omitted).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant, whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson*, 551 U.S. at 94 ("'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"

(quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (citation omitted));
*Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008)
("[W]hen a plaintiff proceeds *pro se*, a court is obliged to construe his
pleadings liberally." (quotation marks and alterations omitted)); *Kaminski
v. Comm'r of Oneida Cnty. Dep't of Soc. Servs.*, 804 F. Supp. 2d 100, 104
(N.D.N.Y. 2011) (Hurd, J.) ("A pro se complaint must be read liberally.").

    B.   <u>Plaintiff's Claim for Damages</u>

Although damages are not sought in plaintiff's prayer for relief, Dkt.
No. 1 at 24-27, in the introduction to his complaint he states that "[t]his is a
civil action seeking relief and damages," *id.* at 1. Because the only
defendant in this action is Acting Commissioner Annucci, who is sued
solely in this official capacity, any award of damages would be precluded
under the Eleventh Amendment. The Eleventh Amendment protects a
state against suits brought in federal court by "private parties seeking to
impose a liability which must be paid from public funds in the state
treasury." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974); *Cory v. White*,
457 U.S. 85, 90-91 (1982); *Ying Jing Gan v. City of N.Y.*, 996 F.2d 522,
529 (2d Cir. 1993). This absolute immunity, which states enjoy under the
Eleventh Amendment, extends to both state agencies and state officials
sued for damages in their official capacities when the essence of the

plaintiff's claim seeks recovery from the state as the real party in interest. *See, e.g., Daisernia v. State of N.Y.*, 582 F. Supp. 792, 798-99 (N.D.N.Y. 1984) (McCurn, J.) ("[A] suit which seeks a money judgment 'which must be paid from the state treasury is barred by the Eleventh Amendment,' even though it is nominally asserted against an individual official." (quoting *Edelman*, 415 U.S. at 663)); *see also Richards v. State of N.Y. App. Div., Second Dep't*, 597 F. Supp. 689, 691 (E.D.N.Y. 1984) (*citing, inter alia, Cory v. White*, 457 U.S. 85, 89-91, (1982)). "To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." *Ying Jing Gan*, 996 F.2d at 529; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity therefore should be treated as suits against the State.").

In light of the fact that defendant Annucci is sued solely in his official capacity, any claim for damages, assuming they are sought by plaintiff, is subject to dismissal.

C.    Sufficiency of the Complaint

Plaintiff's complaint names only Acting Commissioner Annucci as a

defendant. *See generally* Dkt. No. 1. Governing my analysis of plaintiff's

complaint at this juncture is the following construction of plaintiff's

complaint by Judge Kahn, included in his decision addressing plaintiff's

motion for reconsideration:

> The gravamen of Plaintiff's Complaint is that there
> are ongoing, systematic violations of his rights by
> DOCCS staff that violate his right to be free from
> cruel and unusual punishment under the Eighth
> Amendment to the United States Constitution.
> Construed liberally, Plaintiff claims that the violations
> of all inmates' rights are so widespread and
> embedded in the culture of DOCCS that Defendant
> had to be aware that they were and are occurring.
> Plaintiff alleges that Defendant's failure to take steps
> to address the deficiencies amounts to deliberate
> indifference and subjects him to liability for failure to
> adequately train and supervise employees under his
> control. Plaintiff also alleges that Defendant is liable
> for allowing these practices to continue when he
> knew, or should have known, that the practices were
> depriving inmates of their constitutional rights.
> Among other things, Plaintiff alleges that his
> 'complaints to [Defendant] . . . were either
> mishandled or ignored.'

Dkt. No. 24 at 5.

Consistent with Judge Kahn's interpretation of plaintiff's complaint, I

find that plaintiff's section 1983 claims against defendant Annucci are

based on a theory of supervisory liability. It is well established that a

supervisor cannot be liable under section 1983 solely by virtue of being a supervisor, "and [liability] cannot rest on *respondeat superior*." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501. To establish responsibility on the part of a supervisory official for a civil rights violation, a plaintiff must demonstrate that the individual (1) directly participated in the challenged conduct; (2) after learning of the violation through a report or appeal, failed to remedy the wrong; (3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in managing the subordinates who caused the unlawful event; or (5) failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty*, 490 F.3d 143, 152-53 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 554 (2009); *see also Richardson*, 347 F.3d at 435; *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Wright*, 21 F.3d at 501.

In this case, there are no allegations in plaintiff's complaint that defendant Annucci directly participated in any of the constitutional violations undertaken against him by specific Upstate corrections officers.[5]

---

[5]      By way of example, although plaintiff specifically alleges that Corrections Officers Fournier and Graveline "refused to pick up [his] mail" on or about December 2, 2013, there is no allegation that defendant Annucci directly participated in any conduct

Instead, plaintiff contends that defendant Annucci is liable for the conduct of others in his capacity as the Acting Commissioner because he (1) failed to remedy the violations after learning of them and (2) allowed unconstitutional policies and practices to continue throughout the DOCCS's prison facilities. The allegations in the complaint, however, are conclusory and vague, failing to satisfy the governing pleading requirements under Rule 8 and *Iqbal*. Plaintiff alleges that defendant Annucci "and his office ha[ve] created and [are] overseeing a culture of governmental corruption within DOCCS, based around covering up the violations of prisoners [sic] rights by mentally incompetent staff." Dkt. No. 1 at 3, 23. Similarly, according to plaintiff, defendant Annucci is responsible for "creat[ing a hiring] system based on favoritism" that allows "mentally incompetent" individuals to be hired, and then defendant Annucci's office "fail[s] to properly monitor and train employees to eradicate the culture of corruption that has corroded DOCCS and its facilities." *Id.* at 3, 5-6, 24. Without naming defendant Annucci specifically, plaintiff also contends that "DOCCS has allowed the disciplinary process to be used as a tool of retaliation" against inmates. *Id.* at 5, 23-24. The

---

that would give rise to a First Amendment denial-of-court-access cause of action. Dkt. No. 1 at 8.

foregoing practices and policies have allegedly created "an unsafe environment" for prisoners in the DOCCS facilities and resulted in plaintiff's constitutional rights being violated while incarcerated at Upstate. *Id.* at 3-4, 24. According to plaintiff, his "complaints to [defendant] Annucci and other government officials were either mishandled or ignored." *Id.* at 8.

Even liberally construed, these allegations do not place defendant Annucci on notice of the claims asserted against him. Plaintiff's complaint discusses at length the specific conduct of certain DOCCS officers, yet never ties that conduct to a practice or policy promulgated by defendant Annucci. Instead, plaintiff relies on vague allegations of negligent hiring and training, and creating "an unsafe environment" of corruption throughout DOCCS facilities. Dkt. No. 1 at 4. Unlike in some cases where an inmate-litigant alleges that a specific DOCCS policy violates a particular constitutional right, plaintiff in this instance obliquely suggests that defendant Annucci's "office" acquiesces to retaliatory conduct by supervisors in DOCCS facilities. Courts in this circuit routinely dismiss section 1983 claims asserted by prisoners alleging similarly broad and conclusory misconduct by DOCCS officials sued in their supervisory capacities. *See, e.g., Gray-Davis v. N.Y.*, No. 14-CV-1490, 2015 WL

2120518, at *8 (N.D.N.Y. May 5, 2015) (Suddaby, J., *adopting report and recommendation by* Dancks, M.J.) (dismissing, pursuant to 28 U.S.C. § 1915(e), the plaintiff's claims asserted against supervisory officials where the complaint vaguely and conclusorily "alleged that [they] failed to properly hire, oversee, supervise, train, and control their subordinates"); *Mendoza v. McGinnis*, No. 05-CV-1125, 2008 WL 4239760, at *7 (N.D.N.Y. Sept. 11, 2008) (McAvoy, J., *adopting report and recommendation by* Peebles, M.J.) (dismissing the plaintiff's claims against a supervisor-defendant where the allegations were that the defendant was (1) responsible "'for training and . . . management of the facility,'" and (2) "'liable for all deficiencies in his staffs [sic] performance of their official duties of care, custody and control'"); *Pollack v. Nash*, 58 F. Supp. 2d 294, 300 (S.D.N.Y. 1999) (dismissing the plaintiffs' claims asserted against the Commissioner of the Department of Social Services where the only allegation against him was that "plaintiffs experienced what was, in their view, substandard treatment in dealing with the Department of Social Services in 1981 in an unrelated matter because [the defendant] 'permitted the establishment of certain customs which encourage, allow or suffer the prosecution of child abuse cases without sufficient evidence'"); *see also Parris v. N.Y. State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 364

(S.D.N.Y. 2013) ("Conclusory, unsupported allegations of gross

negligence or the existence of a policy are simply insufficient to establish

liability of supervisory officials under § 1983." (citations and alterations

omitted)). Accordingly, I recommend that all claims asserted against

defendant Annucci be dismissed.

    D.   <u>Whether to Permit Amendment</u>

Ordinarily, a court should not dismiss a complaint filed by a *pro se*

litigant without granting leave to amend at least once "when a liberal

reading of the complaint gives any indication that a valid claim might be

stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also*

Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so

requires."); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F. Supp.

986, 1003 (E.D.N.Y.1995) (permitting leave to replead where court could

"not determine that the plaintiffs would not, under any circumstances, be

able to allege a civil RICO conspiracy"). Here, given the procedural history

of this action, the court must determine whether plaintiff is entitled to the

benefit of this general rule.

Most of the deficiencies identified above with respect to plaintiff's

complaint could feasibly be cured through the inclusion of greater factual

detail in his pleading. Accordingly, with the exception of any damage

claims asserted against defendant Annucci in his official capacity, which I recommend be dismissed with prejudice, I recommend that plaintiff be permitted to amend his complaint.

In the event plaintiff chooses to file an amended complaint, he is advised that the law in this circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.'" *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *Pourzandvakil v. Humphry*, No. 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in his amended complaint, plaintiff must clearly set forth the facts that give rise to any asserted claim, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, plaintiff is informed that any such amended complaint will replace the existing complaint, and must be a

wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (quotation marks omitted)).

IV.     SUMMARY AND RECOMMENDATION

Plaintiff's complaint asserts claims against defendant Annucci only his supervisory capacity as the Acting Commission of the DOCCS. To the extent plaintiff's complaint can be construed to request an award of damages against the defendant in his official capacity, that claim is precluded by the Eleventh Amendment and should be dismissed with prejudice. Because the allegations giving rise to plaintiff's claims for declaratory and injunctive relief against defendant Annucci are pleaded in only vague and conclusory terms, I recommend dismissal of plaintiff's complaint for failure to state a claim upon which relief may be granted. Accordingly, it is hereby respectfully

RECOMMENDED that defendant's motion to dismiss plaintiff's complaint in this action ([Dkt. No. 28](Dkt. No. 28)) be GRANTED, and that plaintiff's complaint be DISMISSED without prejudice to amend.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

The clerk of the court is respectfully directed to serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:      January 25, 2016
            Syracuse, New York

David E. Peebles
U.S. Magistrate Judge



Not Reported in F.Supp.2d, 2002 WL 31040370 (S.D.N.Y.)
(Cite as: 2002 WL 31040370 (S.D.N.Y.))

**H**

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
Maurice SAMUELS, Plaintiff,
v.
Donald SELSKY, Glenn Goord, Paul Cecilia, Javier
Iurrue, G. Schwartzman, Dennis Bliden, Jeffery McCoy,
and Christopher P. Artuz, Defendants.
**No. 01CIV.8235(AGS).**

Sept. 12, 2002.

OPINION & ORDER

SCHWARTZ, District J.

I. Introduction

*1 Maurice Samuels alleges that while incarcerated at the Green Haven Correctional Facility,[FN1] prison officials searched his cell and confiscated a number of documents which were deemed to be "subversive" and contraband. Samuels claims that the materials, including theological textbook excerpts, were of a Christian nature and were used in a course he taught in the prison through the New York Theological Seminary. Samuels' alleged possession of these documents led to a misbehavior report and a subsequent disciplinary hearing, for which Samuels was sentenced to 180 days in keeplock and 180 days' loss of packages, commissary privileges, and telephone use. Samuels also alleges that instead of being punished as per his disciplinary hearing, he was sentenced to a more severe punishment, 180 days in a special housing unit which entailed Samuels' being locked in his cell for twenty-three hours per day. On the basis of the allegedly unlawful sanctions to which he was subjected, Samuels has filed the instant action pursuant to 42 U.S.C. § 1983 alleging violations of, *inter alia,* his First Amendment and due process rights, and seeks equitable relief and damages.

Defendants have filed a motion to dismiss the action pursuant to FED. R. CIV. P. 12(b)(1) and (6), and argue that they enjoy qualified immunity barring this suit. For the reasons set forth below, defendants' motion is granted in part and denied in part.

FN1. Defendants repeatedly state that the events giving rise to this action arose while Samuels was incarcerated at the Great Meadow Correctional Facility. Samuels states that the events in question happened at the Green Haven Correctional Facility. Moreover, Samuels' evidence, including the Inmate Disciplinary Report (Exhibit H), the Disciplinary Hearing Record Sheet (Exhibit O), and the Superintendent Hearing Disposition Report (Exhibit P) all note the Green Haven Correctional Facility. In light of the above, the Court determines that defendants' position that the events occurred at Great Meadow is incorrect. The Green Haven Correctional Facility is located in Dutchess County in the Southern District, while Great Meadow is located in Washington County in the Northern District. Defendants make no argument regarding the Court's jurisdiction with respect to the location of the events in question.

II. Factual Background [FN2]

FN2. Unless otherwise indicated, the facts set forth below are gleaned from Samuels' submissions, because on a FED. R. CIV. P. 12(b)(1) or (6) motion, the adjudicating court must assume as true factual allegations made in the complaint. Defendants concede this fact. *See* Defendants' Memorandum of Law in Support of their Motion to Dismiss the Complaint, at 4. It should also be noted that Samuels brings this action *pro se.* As such, it is sometimes difficult to understand fully his contentions. Accordingly, the Court reads the (sometimes confusing) factual allegations in the light most favorable to Samuels.

Not Reported in F.Supp.2d, 2002 WL 31040370 (S.D.N.Y.)
(Cite as: 2002 WL 31040370 (S.D.N.Y.))

Maurice Samuels is currently an inmate at the Sullivan Correctional Facility. Since being incarcerated, Samuels has taken a keen interest in religion. He identifies himself as a member of the Five Percent Nation of Gods and Earths. [FN3] While confined at Sing Sing, he received a degree of Master of Professional Studies in Prison Ministry through the New York Theological Seminary ("NYTS"). *See* Complaint Pursuant to U.S.C.A. Section 1983 ("Complaint"), at 4; Exhibit ("Ex.") A. Upon completion of his studies with the NYTS, Samuels was transferred to the Green Haven Correctional Facility. [FN4] At Green Haven, Samuels was assigned a clerk's position in therapeutic "Reality and Pain Program." He subsequently redesigned the program, creating the "Reality and Pain Therapeutic Counseling Program." *See* Complaint, at 4. During this period he also served as a volunteer inmate instructor in the Black Studies program, and was later assigned as a clerk in Green Haven's Senior Counselor's Office, where he helped create a program for sex offenders. *See id.* at 4.

FN3. The website of the University of Chicago's Divinity School provides a good summary of the beliefs of the adherents of the Five Percent Nation of Gods and Earths, commonly known as the "Five Percenters." *See* Jonathan Moore, *The Five Percenters: Racist Prison Gang or Persecuted Religion?,* SIGHTINGS, May 21, 1999, *available at* http://divinity.uchicago.edu/sightings/archive_1999/sightings-052199.html. The name of the group stems from its belief that only five percent of people are aware of and teach the truth. The term "Gods" refers to black male members; "Earths" refer to black female members. The group was founded by Clarence 13X, who left the Nation of Islam in 1964. According to Moore, "[m]any of the theological accoutrements of Black Muslim belief remain: many read the Qur'an and Elijah Muhammad's writings (especially his "Message to the Black Man"), and they hold to the exclusive divinity of black men." *Id.* (The Moore article, not part of the record, is provided for background purposes only). Samuels has included two pages outlining the differences between the Nation of Gods and Earths and similar black Muslim groups-the Nation of Islam and the Temple of Islam. *See* Exhibit B.

FN4. *See supra* note 1.

The NYTS later began a certificate program in Christian Ministry in conjunction with Marist College at Green Haven. Samuels was invited to teach several courses for the program, including a course entitled "World Views and Values" and another entitled "Introduction to Theology and Methods." *See* Complaint, at 4; Ex. E, at 12. Samuels is listed on the "Faculty and Administration" page of the Certificate in Ministry Program brochure. *See* Ex. E, at 10. In designing his theology course, Samuels, in conjunction with Professor Mar Peter-Raoul (currently the Chair of the Department of Philosophy and Religious Studies at Marist College), prepared a syllabus which included the following:

**\*2** a. This is an introductory approach to contemporary Christian Theology, there will be a broad range of material provided for the student so that they [sic] may see the evolution of Christian Theology and Contemporary Theologies, active in the world today.

b. The course is divided into different sessions (1) What is Theology; (2) Philosophy & Theology; (3) Contemporary Theology; (4) Political and Liberation Theology; (5) Feminist/Womanist Theology; and (6) Black & Third World Theology.

c. This is done so that the student can examine the evolution of Christian Theology and Contemporary Theologies, and arrive at the next step in the process, i.e. explore the [sic] how to do theology.

d. This introduction to theology course will be taught from a [sic] interdisciplinary and non-traditional approach.

Complaint, at 5. This syllabus was approved by the appropriate authorities from NYTS, Marist College, and the Department of Corrections ("DOCS"). *See id.* at 5.

The central issue in this case involves a search of Samuels' cell. On September 15, 1999, another member of the Five Percent Nation of Gods and Earths who was involved in

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31040370 (S.D.N.Y.)
(Cite as: 2002 WL 31040370 (S.D.N.Y.))

the NYTS program was disciplined for allegedly possessing a pamphlet entitled "Awake" or "Awaken" which addressed topics such as racism in the criminal justice system and abuses of the Rockefeller drug laws. *See* Complaint, at 6. On October 19, 1999, the assistant inmate director for the NYTS certificate program was interrogated about the program and why some of its members were also members of the Five Percent Nation of Gods and Earths. At the time, Samuels was housed in the inmate honor block housing Unit and taught a pre-G.E.D. and adult basic education class in the morning and afternoon and taught his theology class in the evening. *See* Complaint, at 6. According to defendants, Sergeant Schwartzman, a member of the prison staff, received a report from a confidential informant that Samuels was a leader of a protest planned to occur around January 1, 2000 ("Y2K protest").[FN5] On October 20, 1999, Schwartzman ordered correction officers Williams and Kelly to search Samuels' cell. Samuels states that the confiscated materials included Marist College and NYTS course handouts for the certificate program, previously published material from the NYTS and Marist College, notes from newspaper articles, a manuscript Samuels had been working on since first attending the NYTS, and Kairos statements.[FN6] *See* Complaint, at 7. According to the Cell Search Report, contraband was found which consisted of a "folder of papers containing subversive material." Ex. G. On the same day, an Inmate Misbehavior Report was completed. *See* Ex. H. The rule violations are listed as 104.12 (action detrimental to the order of the facility) and 113.23 (contraband). *See id.* The narrative section of the Inmate Behavior Report states:

FN5. While denying a link to the Y2K protest, Samuels provides some background on the matter. According to Samuels, DOCS created a program at Green Haven through the Corcraft Industry Division Program known as the Recreational Cell Building Project ("Project"). The Project initially used inmate volunteers to build Inmate Recreational Cells at recently constructed S-Facilities (special housing institutions). According to Samuels, because of poor working conditions, low wages, and other factors, inmates increasingly refused to volunteer for the Project and sought other work assignments. Samuels alleges that DOCS personnel then began using the disciplinary process to systematically force inmates to work

in the Project. *See* Complaint, at 3. Samuels also alleges that prison officials specifically targeted members of the NYTS and the Five Percent Nation of Gods and Earths for compelled work participation in the Project. *See id.* at 4. The planned Y2K protest, in which Samuels claims to have played no role, was intended to protest the program as well as prison conditions generally.

FN6. The Kairos Statements (referred to by Samuels as "Karios Statements") are critiques of traditional church dogma. The most famous Kairos statement originated as a critique of alleged church complicity in the white *apartheid* regime in South Africa.

On the above date [10/20/99] and time while conducting a cell search on cell D-1-21 which houses inmate Samuels, Maurice 85A0184 the following contraband was found and recovered;

**\*3** (1) Folder of papers containing subversive material These papers speak about inmate [sic] uniting together to fight against opositions [sic] such as the N.Y. parole system and other dept. of correction [sic] programs.

This material is consistant [sic] with information recieved [sic] that inmate Samuels has been active in urging others to participate in a demonstration on or about Jan. 1, 2000, which led to his cell being searched.

Ex. H. The form is signed by G. Williams, a correction officer, and G. Schwartzman. The documents are not identified, nor is there an explanation of why they were considered "subversive." Samuels repeatedly asked prison authorities to identify the "subversive" documents without success. *See, e.g.,* Exhibits ("Exs.") J, K, M, N, V, 7, 9. Defendants have not furnished the confiscated papers for the Court, and make no representation as to what documents were found in Samuels' cell or why they are considered "subversive." Samuels states that the materials seized by the prison officials is not literature pertaining to the Five Percent Nation of Gods and Earths but Christian ministry materials he used in teaching his class and which had previously been approved by the NYTS and prison

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31040370 (S.D.N.Y.)
(Cite as: 2002 WL 31040370 (S.D.N.Y.))

authorities. *See* Complaint, at 5. Samuels also states that newspaper clippings and a manuscript he had been working on since 1986 were taken. *See* Affidavit [of Maurice Samuels] in Support of Opposition Motion ("Samuels Aff."), at ¶¶ 7-9.

Samuels was immediately placed in keeplock status pending a hearing on the misbehavior report. *See* Defendants' Memorandum of Law in Support of their Motion to Dismiss the Complaint ("Motion Brief"), at 3. Under DOCS rules, Samuels was entitled to an employee assistant to assist in his defense of the charges set forth in the misbehavior report.[FN7] An Assistant Selection Form was provided to Samuels, which instructed Samuels to select three people, one of whom would be assigned to him based on availability. *See* Ex. I. Samuels selected Hanna, Lawrence, and Schwartzman as his three choices. *See id.* Instead, Paul Cecilia was assigned to Samuels. *See* Motion Brief, at 3. Samuels alleges that instead of assisting him in the preparation of his case, Cecilia proceeded to interrogate Samuels, asking him if he was in contact with Green Party candidate (formerly "Grandpa Munster") Al Lewis, whether he had any letters from him, whether he had any letters from outside organizations involved in prison reform, whether he was involved in any planned Y2K protest, and what the "Kairos" document was. *See* Complaint, at 8. Samuels further alleges that Cecilia did not explain the charges contained in the misbehavior report and failed adequately to conduct an investigation on Samuels' behalf. [FN8] Cecilia signed an Assistant Form on October 25, 1999, at 12:53 pm, indicating that he had interviewed witnesses, assisted as requested, and reported back to Samuels. *See* Ex. J. However, on October 26, Green Haven officials requested a one-day extension to hold a disciplinary hearing on the basis that the "assistant is trying to speek [sic] to with witiness [sic]." Ex. L. The extension was granted by "Alternate User 999SHURXR for 999SHU." *See id.* The name of the grantor is not listed on the computer printout.

FN7. *See* N.Y. Comp.Codes R. & Regs. tit. 7, § 251-4.1 (2002):(a) An inmate shall have the opportunity to pick an employee from an established list of persons who shall assist the inmate when a misbehavior report has been issued against the inmate if [...] (4) the inmate is confined pending a superintendent's hearing [...].

FN8. Samuels cites a number of failures on Cecilia's behalf: he failed to turn over documentary evidence relating to the charges against Samuels, he failed to provide a written record of the questions he was supposed to ask Samuels' witnesses, he failed to record the testimony of the witnesses interviewed on Samuels' behalf, he failed to explain exactly what material that was confiscated constituted contraband, and he failed to interview the confidential informant to determine his existence or credibility. *See* Complaint, at 9.

**\*4** The "Tier III" disciplinary hearing was held on October 27, 1999. [FN9] At the hearing, two inmates and Dr. George W. Webber testified on Samuels' behalf (Webber testified by telephone). Webber is the director of the Certificate Program and president emeritus of the NYTS. Sgt. Schwartzman testified against Samuels. *See* Ex. O. Samuels also submitted a written brief for the hearing. *See* Ex. M. Samuels was found guilty of "demonstration" and "contraband" on November 9, 1999. The hearing officer, Javier Irurre,[FN10] summarized his findings as follows:

FN9. Tier III hearings are held for "the most serious violations of institutional rules." *Walker v. Bates,* 23 F.3d 652, 654 (2d Cir.1994).

FN10. The name "Javier Irurre" appears on the Hearing Disposition form. *See* Ex. P. Samuels spells the name "Iurrue," *see* Complaint, at 9, while defendants in turn use two spellings for the name-"Iurre" and "Iurrue *See* Motion Brief, at 3. The Court uses the "Irurre" spelling found on the Hearing Disposition form, apparently in Javier Irurre's own handwriting, and on the Tier III assignment form signed by Superintendent Artuz. *See* Appendix 7.

Statement of Evidence Relied Upon: Papers & hand written papers retrieved from your cell show statements inciting revolt and prison unrest. Confidential tape shows similarity between statements made in papers you have written and others in your possession with statements found in written material belonging other [sic] inmates inciting the so called Y2K revolt.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31040370 (S.D.N.Y.)
(Cite as: 2002 WL 31040370 (S.D.N.Y.))

Confidential tape and testimony at the hearing establish a link between the statements in papers found in your cell and phamphlets [sic] circulating among prison population urging to strike in Y2K.

Reason for Disposition: Inciting revolt can not be tolerated in a correctional setting.

Ex. P. Samuels was punished with 180 days of keeplock, 180 days of loss of packages, 180 days of loss of commissary privileges, and 180 days of loss of phone privileges. *See* Ex. P; Complaint, at 11. The hearing officer did not impose special housing unit placement. *See* Ex. P; Complaint, at 11. The Court has not been furnished with a transcript of the hearing or of the "confidential tape" referred to by Irurre.

Samuels alleges that his due process rights were violated at the misbehavior hearing. He alleges that he failed to receive a timely hearing, that he received inadequate assistance from the employee assistant assigned to him (Cecilia), and that Dr. Mar Peter-Raoul was not permitted to testify on Samuels' behalf. *See* Complaint, at 9, 11. Samuels also protests the fact that the misbehavior report never specifies exactly what Samuels did to constitute "demonstration." *See id.* at 11. No written record was apparently made stating the reasons Dr. Peter-Raoul was not permitted to testify. Dr. Peter-Raoul later wrote a lengthy letter addressed to defendants Bliden, McCoy, and Irurre in which she explained the nature of the Kairos documents and stated her desire to serve as a witness for Samuels. *See* Complaint, at 10.

On November 8, 1999 (one day before Irurre found Samuels guilty of demonstration and contraband), Samuels submitted a detailed written brief to First Deputy Superintendent Dennis Bliden and "Jeff Macoy" [sic] on November 8, 1999, requesting that his misbehavior report be dismissed. *See* Ex. N. While waiting for a response to his letter, Samuels was transferred to the Upstate Correctional Facility, a special housing unit facility, where he was housed for 180 days.[FN11] *See* Complaint, at 11; Motion Brief, at 4; Plaintiffs' [sic] Memorandum of Law in Opposition to Defendants' Motion ("Opposition Brief"),

at 27. Neither Samuels nor defendants provides an explanation as to why Samuels was transferred to the special housing unit facility. Jeff McKoy (listed in the caption as Jeffery McCoy) wrote to Samuels on November 12, 1999, advising him that he lacked the authority to overturn a Tier III disposition. *See* Ex. R. Bliden wrote to Samuels on November 18, 1999, stating that any appeal Samuels wished to file had to be directed to the Commissioner in Albany. He stated that "[u]ntil such time as we receive a decision from [Albany], I will not modify the disposition." Ex. U.

FN11. Placement in a special housing unit involves confinement for twenty-three hours per day. The inmates assigned to special housing units receive virtually no programming, no congregate activities, and very little natural light. Reading materials are severely restricted, as are visits. *See* Ex. 16, at 5-6 (THE NEW YORK STATE SENATE DEMOCRATIC TASK FORCE ON CRIMINAL JUSTICE REFORM, CRIMINAL JUSTICE REFORM: A TIME THAT'S COME (2001)).

**\*5** As per Deputy Superintendent Bliden's instructions, Samuels submitted a seventeen-page letter to Donald Selsky, the Director of the Inmate Disciplinary Program, in Albany. *See* Ex. V. In the course of his letter to Selsky, Samuels voices his procedurally and substantively-based arguments for dismissing his misbehavior adjudication. Selsky affirmed the November 9, 1999 hearing on January 6, 2000 on behalf of Glenn Goord, the Commissioner.[FN12] *See* Ex. 6. Samuels filed a request for a "time-cut" from the determination of the Superintendent on February 28, 2000. *See* Ex. 6. Prisoners' Legal Services of New York ("PLS") sent a letter to Selsky on March 2, 2000, asking him to reconsider his decision. On April 27, 2000, PLS sent a supplemental request for reconsideration, this time outlining in detail the legal bases for which Samuels' disciplinary charges should be withdrawn (by this point, Samuels had already served the imposed penalty; the letter asks Selsky to reverse the disciplinary hearing and expunge the disciplinary charges). *See* Ex. 9. Selsky did not alter his January 2000 decision. Samuels then appealed to the New York State Supreme Court, apparently by means of an Article 78 proceeding. The court, Canfield J., concluded that Samuels' appeal raised a substantial evidence question that could not be resolved by "reference

Not Reported in F.Supp.2d, 2002 WL 31040370 (S.D.N.Y.)
(Cite as: 2002 WL 31040370 (S.D.N.Y.))

to the objections in point of law." Decision and Order dated October 13, 2000. The court then transferred the matter to the Appellate Division, Third Judicial Department pursuant to N.Y. C.P.L.R. 7804(g).[FN13] *See id.*

> FN12. Prisoners' Legal Services of New York cite the date as January 20, 2000. *See* Ex. 7; Samuels cites the date as January 20, 1999. *See* Ex. 6.

> FN13. No Appellate Division decision on the matter is in the record. However, defendants' argument on the exhaustion of remedies focuses on administrative remedies and not on this potential deficiency.

Samuels then filed the instant action pursuant to 42 U.S.C. § 1983 based on defendants' alleged violations of his due process, First Amendment, and other constitutional rights, seeking equitable relief as well as compensatory and punitive damages.[FN14] The defendants move to dismiss the complaint pursuant to FED. R. CIV. P. 12(b)(1) (lack of subject matter jurisdiction) and (6) (failure to state a claim upon which relief can be granted). For the reasons set forth below, defendants' motion is granted in part and denied in part.

> FN14. In his complaint, Samuels also alleged an Eighth Amendment violation stemming from his treatment during a trip to and from his brother's funeral. This claim was dismissed by order of Judge Mukasey dated September 4, 2001.

III. Legal Standard

A. *Pro Se* Complaints

The Second Circuit has repeatedly held that *pro se* complaints must be read more leniently than those prepared by lawyers. Recently, for example, the Second Circuit noted that a "*pro se* complaint should not be dismissed unless 'it appears beyond doubt that the plaintiff[ ] can prove no set of facts in support of [his]

claim[s] which would entitle [him] to relief." ' *Weixel v. Board of Educ. of the City of New York,* 287 F.3d 138, 145 (2d Cir.2002) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)). Moreover, when considering a motion to dismiss a *pro se* complaint, "courts must construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggest[s]." *Weixel,* 287 F.3d at 146 (quoting *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (internal quotation marks omitted)). The Second Circuit has also emphasized that a liberal reading of a *pro se* complaint is especially important when the complaint alleges civil rights violations. *See Weixel,* 287 F.3d at 146; *Weinstein v. Albright,* 261 F.3d 127, 132 (2d Cir.2001). Consequently, Samuels' allegations must be read so as to "raise the strongest arguments that they suggest." *Weixel,* 287 F.3d at 146 (quoting *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (internal quotation marks omitted)).

B. Motions to Dismiss Pursuant to FED. R. CIV. P. 12(b)(1) & (6)

*6 Defendants move to dismiss the complaint pursuant to FED. R. CIV. P.12(b)(1) and (6). The standard of review for dismissal on either basis is identical. *See, e.g., Moore v. PaineWebber, Inc.,* 189 F .3d 165, 169 n. 3 (2d Cir.1999); *Jaghory v. New York State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir.1997). In either case, a court must assume as true factual allegations in the complaint and construe the complaint in the light most favorable to the plaintiff. *See, e.g., York v. Association of Bar of City of New York,* 286 F .3d 122, 125 (2d Cir.2002); *Shipping Fin. Servs. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir.1998). While the question of subject matter jurisdiction goes to the power of the court to hear a case, the issue on a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *York,* 286 F.3d at 125 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)).

IV. Legal Analysis

A. Exhaustion of Administrative Remedies

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31040370 (S.D.N.Y.)
(Cite as: 2002 WL 31040370 (S.D.N.Y.))

1. Legal Standards Governing Exhaustion of Administrative Remedies

Lawsuits by prisoners are governed by 42 U.S.C. § 1997e, which holds in part:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Under this section, where a prisoner brings an action in a district court before exhausting all available administrative remedies, the action must be dismissed. A unanimous Supreme Court has recently interpreted the term "prison conditions" expansively, requiring an exhaustion of all available administrative remedies whether the inmate suit concerns a general prison condition (i.e., quality of food) or a discrete incident specific to one prisoner (i.e., excessive force). See *Porter v. Nussle*, 122 S.Ct. 983 (2002). The Court also held that the exhaustion requirement applies regardless of whether the administrative remedies are "plain," "speedy," or "effective," and also applies when the prisoner "seeks relief not available in grievance proceedings" such as monetary damages. *Id.* at 988.

As a preliminary matter, defendants concede that Samuels has exhausted all administrative remedies concerning his due process violations. See Defendants' Supplemental Memorandum of Law and Reply Memorandum of Law in Further Support of Their Motion to Dismiss ("Reply Brief"), at 9. Defendants' concession is apparently based on DOCS Directive No. 4040, which holds that:

[T]he individual decisions or dispositions of the following are not grievable: [...] Media Review, disciplinary proceedings, inmate property claims (of any amount) and records review (Freedom of Information Requests, expunction). However, the policies, rules, and procedures of any of these programs or procedures may be the subject of a grievance.

*7 As noted above, Samuels unsuccessfully appealed his case within the prison facility and later to defendant Selsky in Albany, who denied it and denied reconsideration thereof.

Defendants argue, however, that "if a claim is incidental to a disciplinary determination [...] the fact that the disciplinary charge itself has been appealed does not excuse the failure to file a grievance." Reply Brief, at 9. Defendants thus seek to sever the alleged due process violations (for which Samuels has exhausted all administrative remedies) from several closely related claims-Samuels' claims protesting the confiscation of his papers, his transfer to the special housing unit, and DOCS policy regarding the Five Percent Nation of Gods and Earths (for which defendants argue Samuels has failed to exhaust all administrative remedies). *See* Reply Brief, at 9.

2. Confiscation of Documents

Defendants allege that the confiscation of the religious material is a matter separate from the underlying disciplinary hearing. While Samuels directly appealed his disciplinary adjudication, he concedes that he did not bring any complaint to the inmate grievance program. *See* Complaint, at 1. Defendants argue that Samuels' claim alleging the confiscation of religious material must therefore be dismissed because he failed to exhaust administrative remedies. *See* Reply Brief, at 9-10. Defendants represent that confiscation of religious documents from a cell is a grievable matter. The Court notes, however, that in similar cases inmates have been told that such confiscations are not grievable. *See, e.g., Allah v. Annucci,* 97 Civ. 607, 1999 U.S. Dist. LEXIS 7171, at *2-*3 (W.D.N.Y. Mar. 25, 1999) (plaintiff filed an inmate grievance protesting confiscation of religious material and was told such a seizure was not grievable).

As a preliminary matter, there is considerable confusion regarding exactly which documents were confiscated. Samuels has sought these documents numerous times; defendants have not made the documents available to him or to the Court. Initially, defendants stated that "Plaintiff specifically alleges in his compliant that the defendants confiscated a pamphlet called 'Awake'." Motion Brief, at

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31040370 (S.D.N.Y.)
(Cite as: 2002 WL 31040370 (S.D.N.Y.))

8. Later, defendants state that it is "unclear from plaintiff's complaint and response whether the pamphlet 'Awake' was confiscated from him or another." Yet since defendants conducted the search and confiscation of the materials from Samuels' cell, they should know whether "Awake" was confiscated from Samuels' cell. Nonetheless, they claim ignorance. Samuels himself makes his position clear: "material taken from Plaintiff [sic] cell [...] was not [...] Awake." Complaint, at 2. In a later brief, he writes "Complainant NEVER POSSESSED a pamphlet entitled "Awake." Opposition Brief, at 3 (emphasis in original).

In any event, it is clear that certain religiously-oriented documents were confiscated from Samuels' cell. Samuels seeks, *inter alia,* punitive and compensatory damages he claims to have suffered through defendants' alleged violation of his rights, including his First Amendment rights. *See* Complaint, at 13. Defendants argue that Samuels "never appealed any grievance relating to the confiscation of religious material" to the Inmate Grievance Program, citing an affidavit of Thomas G. Eagen ("Eagen Aff."), the Director of DOCS's Inmate Grievance Program, dated March 13, 2002. While this may be true, Samuels did protest the confiscation of documents in his direct appeal to Bliden and McKoy and later to Selsky. *See* Exs. N, V, 9. These appeals were denied.

**\*8** As noted, it is factually unclear whether seizures of religious materials may be grieved through the Inmate Grievance Program. However, even if such seizures are grievable, Samuels' alleged failure to exhaust all administrative remedies as required by 42 U.S .C. § 1997e(a) goes only to the narrow issue of the confiscation *qua* confiscation-the damage Samuels suffered from the loss of his property (such as the property value of the books). The main confiscation issue put forward by Samuels is not the confiscation in and of itself, but the confiscation insofar as it was the basis for the misbehavior adjudication.[FN15] This issue was already effectively grieved by Samuels through his direct appeal of his misbehavior determination, which *per se* implicated the confiscation of documents. Defendants argue nonetheless that any confiscation that took place is separate from the disciplinary hearing and thus must be separately grieved. The Court does not agree.

FN15. The real damage suffered by Samuels

was, *inter alia,* his 180 days in keeplock (and later a special housing unit).

Disputes stemming from a disciplinary hearing are properly appealed directly and not through the Inmate Grievance Program. To the extent that the confiscation issue is a constituent element of the misbehavior adjudication, Samuels need not file an administrative grievance because he already sought review of the matter on his direct appeal. The recent case of *Flanagan v. Maly,* 99 Civ. 12336(GEL), 2002 WL 122921 (S.D.N.Y. Jan. 29, 2002), is instructive. In *Flanagan,* the plaintiff brought two separate claims-one stemming from inadequate access to medical and legal resources, and one stemming from an alleged due process violation in a disciplinary hearing. The court found that the plaintiff had not exhausted all administrative remedies with regard to medical and legal access because he failed to utilize the Inmate Grievance Program. With regard to the disciplinary hearing, however, the court held that utilization of the grievance procedures was unnecessary because the plaintiff had already appealed the issues directly:

To require [plaintiff] to file an administrative grievance in these circumstances would be absurd, and Congress cannot have intended such a requirement. When an inmate challenges the procedure at a disciplinary hearing that resulted in punishment, he exhausts his administrative remedies by presenting his objections in the administrative appeals process, not by filing a separate grievance instead of or in addition to his ordinary appeal. Pursuit of the appellate process that the state provides fulfills all the purposes of the exhaustion requirement of [ § 1997e(a) ][FN16], by giving the state an opportunity to correct any errors and avoiding premature federal litigation. Once the alleged deprivation of rights has been approved at the highest level of the state correctional department to which an appeal is authorized, resort to additional internal grievance mechanisms would be pointless.

FN16. The district court mistakenly cites the provision as " § 1997a(e)," a nonexistent section.

*Flanagan,* 2002 WL 122921, at *2. While the issue referred to in *Flanagan* was a due process defect in the disciplinary hearing (not at issue here because defendants

Not Reported in F.Supp.2d, 2002 WL 31040370 (S.D.N.Y.)
(Cite as: 2002 WL 31040370 (S.D.N.Y.))

concede that Samuels exhausted all available administrative remedies), the underlying point, that issues directly tied to the disciplinary hearing which have been directly appealed need not be appealed again collaterally through the Inmate Grievance Program, is applicable to the confiscation issue. Moreover, the confiscation in the instant case is part and parcel of the misbehavior adjudication-unlike the medical claim made in *Flanagan* which was divorced from the due process claim.

**\*9** Defendants rely on a single case in support of their contention that the confiscation issue and the disciplinary hearing issue are wholly separate, *Cherry v. Selsky,* 99 Civ. 4636(HB), 2000 U.S. Dist. LEXIS 9451 (S.D.N.Y. July 7, 2000). It is not completely clear which section of the opinion defendants are citing, because no pinpoint citation is given. In *Cherry,* Judge Baer held that the filing of a false misbehavior report by a corrections officer is a grievable matter. *See id.* at \*21. However, *Cherry* is readily distinguishable from the instant case because in *Cherry,* the plaintiff had "not brought a claim with respect to the due process afforded him at his disciplinary hearing [...]." *Id.* at \*15. In contrast, Samuels makes this claim. As a consequence, the due process violations, including the allegedly wrongful confiscation (to the extent it led to the misbehavior adjudication) may be appealed directly.

Consequently, while Samuels has not exhausted his administrative remedies with regard to the injuries he suffered from the confiscation *alone,* he has exhausted his administrative remedies with regard to the injuries he suffered from the confiscation inasmuch as the confiscation of the religious materials serves as the basis for the disciplinary hearing.[FN17]

> **FN17.** The confiscation of Samuels' documents is not an ancillary issue unrelated to the disciplinary hearing (as was Samuels' Eighth Amendment argument, *see supra* note 14). Instead, the allegedly improper confiscation of materials is part and parcel of the disciplinary proceeding. The primary harm suffered by Samuels of the confiscation was not the value of the documents seized (which is never mentioned by Samuels) but the fact that the confiscation of allegedly harmless materials led to his confinement in keeplock and later in a special

housing unit for 180 days.

3. Special Housing Unit Confinement

Defendants similarly argue that Samuels' claim of retaliatory confinement in a special housing unit is barred because he failed to exhaust all available administrative remedies.[FN18] It is not entirely clear whether Samuels is making an argument based on retaliation. On one hand, he states that "Plaintiff [sic] claim is not on issue of retaliation." Samuels Aff., at ¶ 4. Elsewhere, he argues that "Plaintiff should not need to fear imposition of [special housing unit] confinement because they [sic] have engaged in prison litigation and/or prison reform activity [...]." Opposition Brief, at 25. As noted above, after being sentenced, Samuels was apparently transferred to a special housing unit for 180 days, which involves confinement for twenty-three hours per day.

> **FN18.** There are two separate retaliation issues at play in this action. The first, discussed here, is Samuels' claim of retaliatory confinement in a special housing unit. The second, discussed below, is Samuels' claim that the misbehavior adjudication itself was a form of retaliation for the NYTS's opposition to the Cell Building Project. *See supra* note 5.

Defendants represent to the Court that confinement to a special housing unit is ordinarily grievable. *See* Reply Brief, at 11. Samuels failed to bring this grievance to the Inmate Grievance Program. However, Samuels argues, and defendants do not contest, that Samuels was transferred to the special housing unit as punishment for his misbehavior adjudication, even though he was sentenced to 180 days of keeplock. Consequently, his appeal of his misbehavior adjudication necessarily implicates his sentence-not only his *de jure* punishment of 180 days of keeplock, 180 days' loss of telephone, package, and commissary privileges, but also his *de facto* punishment of 180 days of special housing unit confinement. *See Flanagan,* 2002 WL 122921, at \*2. The transfer to a special housing unit potentially implicates due process concerns. *See, e.g., Tookes v. Artuz,* 00 Civ. 4969, 2002 WL 1484391, at \*3 (S.D.N.Y. July 11, 2002) (noting that in the Second Circuit, confinement in a special

Not Reported in F.Supp.2d, 2002 WL 31040370 (S.D.N.Y.)
(Cite as: 2002 WL 31040370 (S.D.N.Y.))

housing unit for more than 101 days generally implicates a liberty interest protected by the Due Process Clause).

4. DOCS Policy Regarding the Five Percent Nation of Gods & Earths

**\*10** Samuels makes an oblique reference to the fact that DOCS has treated members of the Five Percent Nation of Gods and Earths unfairly and partially. *See* Opposition Brief, at 3. To the extent that Samuels has a claim regarding DOCS's treatment of members of the Five Percent Nation, it is not directly tied to his disciplinary hearing and has not been grieved through the Inmate Grievance Program. Moreover, he has not taken issue with DOCS policies regarding the Five Percent Nation in his appeal. Consequently, this issue is dismissed with prejudice.

5. Dismissal of Action

Defendants argue that because Samuels seeks to assert certain unexhausted claims, "the entire action should be dismissed," irrespective of the fact that some claims are (as defendants concede) exhausted. Reply Brief, at 11. Defendants point to no binding precedent in support of this contention. The only New York case cited by defendants is *Radcliffe v. McGinns,* 00 Civ. 4966 (LMM), 2001 U.S. Dist. LEXIS 15528 (S.D.N.Y. Sept. 27, 2001). However, *Radcliffe* does not support defendants assertion that dismissal of some unexhausted claims mandates the dismissal of all claims, because in that case the claims were unexhausted as to *all* defendants. On that basis, the *Radcliffe* court dismissed all claims without prejudice. This Court thus does not find that dismissal of the exhausted claims is warranted.

B. Due Process

1. Samuels Pleads a Valid Due Process Claim

Defendants argue that Samuels does not plead a valid due process claim, claiming that Samuels does not identify a liberty interest, protected by the Due Process Clause, of

which he was deprived. *See* Motion Brief, at 9. Defendants state that "[other] then [sic] allege that he was sentenced to keeplock and transferred to Upstate, plaintiff does not allege any facts that distinguishes [sic] the disciplinary sentence from general prison population conditions." [FN19] *Id.* at 9. Defendants cite *Walker v. Goord,* 98 Civ. 5217(DC), 2000 U.S. Dist. LEXIS 3501, at \*22 (S.D.N.Y. Mar. 22, 2000) for the proposition that a complaint that merely alleges that a plaintiff was housed in a special housing unit does not state a due process claim. *See* Motion Brief, at 10. In fact, *Walker*'s ruling is not so sweeping. In *Walker,* the court held that to establish a liberty interest, a prisoner "must establish that the restraint imposed creates an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *Walker,* at \*21 (quoting *Sandin v. Conner,* 515 U.S. 472, 484 (1995)). The court also reiterated the Second Circuit's holding that there is no "bright-line rule regarding the length or type of sanction" necessary. *Walker,* at \*21 (citation omitted). The prisoner must also establish that the state has granted its inmates a protected liberty interest in remaining free from that confinement or restraint. *Id.* at \*21.

FN19. As noted *supra,* Samuels was also sentenced to 180 days' loss of packages, telephone, and commissary privileges.

**\*11** Samuels is able to meet this burden. The deprivation of liberty Samuels suffered was onerous. He was moved from the inmate honor block housing unit to keeplock and then to a special housing unit. *See supra* note 11. Moreover, unlike the plaintiff in *Walker,* Samuels identifies the length of time he was punished (180 days). *See Walker,* at \*22. In light of these facts, and given the length of his confinement, Samuels has met the *Sandin* test cited above. *See Tookes v. Artuz,* 00 Civ. 4969, 2002 WL 1484391, at \*3 (S.D.N.Y. July 11, 2002). Additionally, the requirement of an appealable hearing, with certain procedural safeguards, *see infra,* indicates that the state has granted inmates a protected liberty interest in remaining free from keeplock and special housing unit placement.

Due process requirements for a prison disciplinary hearing are "in many respects less demanding than those for criminal prosecutions." *Espinal v. Goord,* 180 F.Supp.2d

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31040370 (S.D.N.Y.)
(Cite as: 2002 WL 31040370 (S.D.N.Y.))

532, 537 (S.D.N.Y.2002) (quoting *Edwards v. Balisok,* 520 U.S. 641, 647 (1997)). At the same time, "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Duamutef v. Hollins,* 297 F.3d 108, 112 (2d Cir.2002) (citation omitted). With respect to Tier III hearings such as the one at issue here, the Fourteenth Amendment requires that:

(1) the inmate receive at least twenty-four hours written notice of the disciplinary charges against him;

(2) the inmate be permitted to call witnesses and present evidence "when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals";

(3) the inmate be judged by a fair and impartial hearing officer;

(4) the disciplinary conviction be supported by some evidence; and

(5) the inmate be provided with a written statement of fact findings that support the disposition as well as the reasons for the disciplinary action taken.

*Espinal,* 180 F.Supp.2d at 538 (citing *Wolff v. McDonnell,* 418 U.S. 539, 563-69 (1974)) (internal citations omitted)).

2. Whether Samuels Received the Process Due Him

Defendants concede that Samuels was entitled to the aforementioned rights under *Wolff. See* Reply Brief, at 13. They argue, however, that Samuels received all the procedural safeguards due him. Before analyzing defendants points in detail, the Court notes the paucity of the record before it. While Samuels has provided nearly fifty exhibits, defendants have provided only a two-page affidavit by Inmate Grievance Program Director Thomas G. Eagen dated March 13, 2002, attached to which is a nine-line computer printout of what purports to be

Samuels' grievance file. Defendants have failed to submit, *inter alia,* a transcript of the disciplinary hearing, a transcript or audio recording of the confidential witness statements, a written basis for the rejection of Samuels' witnesses, or a copy of the documents that were supposedly seized from Samuels' cell. While the Court is cognizant of the fact that the instant motion is not one for summary judgment, without these and other documents, it is difficult for this Court fully to evaluate the merits of the parties' arguments. More troubling is the fact that this is apparently not the first time an inmate has been sentenced to a special housing unit on the basis of evidence which has not been preserved for judicial review. Indeed, in *Cherry v. Selsky,* 99 Civ. 4636, 2000 U.S. Dist. LEXIS 9451, at *9-*12 (S.D.N.Y. July 7, 2000), a case cited by defendants, the court noted that on more than one occasion, Selsky was forced to reverse his previous decision denying an inmate's appeal because the "record of [the disciplinary] hearing was incomplete and the 'confidential tape' was 'unavailable for judicial review.' " *Id.* at *9 (citation omitted). On the occasion cited by the *Cherry* court, the inmate's record was expunged, but only after the plaintiff had served 125 days in a special housing unit. *See id.* at *9.

a. Witnesses

*12 Samuels argues that his due process rights were violated because he was not permitted to call Dr. Peter-Raoul as a witness at his disciplinary hearing. *See* Complaint, at 9; Ex. V, at 2. Defendants state, without explanation, that "it is clear that the proffered testimony would have been irrelevant and redundant." Motion Brief, at 13. The Court agrees with defendants that the right of an inmate to call witnesses in his defense is not limitless. Nevertheless, prison authorities' failure to allow an inmate to call a witness may be grounds for reversal, where the authorities fail to justify their actions. *See Ayers v. Ryan,* 152 F.3d 77, 81 (2d Cir.1998). In this case, Dr. Peter-Raoul was apparently the author of some or all of the "subversive" materials and had close ties to the theological seminary program at the prison. According to Samuels, she also "assisted plaintiff with his course syllabus and provided much of the material utilized" therein. Complaint, at 9. She was therefore in a unique position to explain the appropriateness and relevance of the materials allegedly possessed by Samuels, who had in fact argued that the materials in question were issued to

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31040370 (S.D.N.Y.)
(Cite as: 2002 WL 31040370 (S.D.N.Y.))

him through the NYTS program with the authorization of prison officials. *See, e.g.,* Complaint, at 5, Ex. V, at 2. The misbehavior hearing record sheet states that, "if any witness is denied [the opportunity to testify,] form 2176 explaining the reason for that determination must be given to the inmate and included as part of the record." Ex. O. No such form was filled out, and nowhere in the record do defendants explain or justify their exclusion of Dr. Peter-Raoul. *See* Ex. Q. Due process rights may be violated where prison authorities fail "without rational explanation" to obtain a witness requested by an inmate during a disciplinary hearing. *Ayers v. Ryan,* 152 F.3d 77, 81 (2d Cir.1998). Defendants' failure to justify their exclusion of Dr. Peter-Raoul potentially gives rise to a due process violation. [FN20] Dismissal is therefore inappropriate.

> FN20. Samuels also appears to allege that Cecilia, his employee assistant, was not permitted to testify on Samuels' behalf, and that Schwartzman testified outside Samuels' presence. *See* Ex. V, at 4; Plaintiffs' Supplemental Memorandum of Law and Reply Memorandum of Law in Further Support of Plaintiffs' Motion to Stay Complaint, at 8.

b. Confidential Informant

Samuels also protests the fact that he was not furnished with statements of the confidential informant, and argues that the record is insufficient to permit an assessment of the reliability of the informant's testimony. The Second Circuit has noted that "even if due process does require a hearing officer to conduct an independent assessment of the informant's credibility, that 'would not entail more than some examination of indicia relevant to credibility rather than wholesale reliance upon a third party's evaluation of that credibility.' " *Espinal v. Goord,* 180 F.Supp.2d 532, 540 (S.D.N.Y.2002) (quoting *Russell v. Scully,* 15 F.3d 219, 223 (2d Cir.1993)). In the instant case, the lack of a full record does not permit the Court to determine whether Irurre, the presiding officer at the Tier III hearing, made the required "examination of indicia relevant to the credibility of the confidential informant[ ], whether by an independent assessment or otherwise." *Espinal,* 180 F.Supp.2d at 540. Consequently, dismissal is inappropriate, because it is uncertain whether Samuels' punishment was supported by constitutionally sufficient

evidence.

c. Assistance Provided by the Employee Assistant

**\*13** Samuels claims that his employee assistant, Cecilia, violated his due process rights by, *inter alia,* failing to explain the charges against Samuels, failing to provide Samuels with documentary evidence relating to the charges in the misbehavior report, failing to make a written record of the questions he asked the interviewees, failing to record the testimony of the witnesses he allegedly interviewed for Samuels, failing to interview the confidential informant on Samuels' behalf, and failing to interview one of the three witnesses requested by Samuels. *See* Complaint, at 9; Opposition Brief, at 22. Samuels also complains that his employee assistant did not assist in his defense but instead interrogated him about his alleged links to prison reform activists. *See* Ex. V, at 5-6.

Defendants concede that inmates have a limited right to assistance in misbehavior proceedings. *See Silva v. Casey,* 992 F .2d 20, 22 (2d Cir.1993) (per curiam). While defendants are correct in asserting that inmates do not have the right to appointed or retained counsel at a misbehavior hearing, *see Wolff v. McDonnell,* 418 U.S. 539, 570 (1974), they do have a right to assistance in "certain circumstances [in which they] will be unable to 'marshal evidence and present a defense' [...]." *Silva,* 992 F.2d at 22. Such situations include where the inmate is confined pending a superintendent's hearing. *See* N.Y. Comp.Codes R. & Regs. tit. 7, § 251-4.1(a)(4). The Green Haven Notice of Assistance form given to Samuels specifically states that an "inmate shall have the opportunity to pick an employee from established lists of persons who shall assist the inmate when a Misbehavior Report has been issued against the inmate if [...] [t]he inmate is keeplocked or confined to a special housing unit and is unable to prepare his defense." Ex. J. In the instant case, Samuels was entitled to an employee assistant because he was keeplocked immediately after the search of his cell and was unable to prepare his defense.

As noted, Samuels makes broad assertions as to the deficiency of his employee assistant. *See* Ex. V, at 3-8. Based on Samuels' factual assertions, it is possible that employee assistant Cecilia failed to provide even the

"limited" assistance to which Samuels is entitled.[FN21] Such a failure potentially implicates Samuels' due process rights. *See Ayers v. Ryan,* 152 F.3d 77, 80-81 (2d Cir.1998). Because the instant motion requires that the Court accept Samuels' allegations as true, dismissal is inappropriate.

> FN21. By statute, the "assistant's role is to speak with the inmate charged, to explain the charges to the inmate, interview witnesses and to report the results of his efforts to the inmate. He may assist the inmate in obtaining documentary evidence or written statements which may be necessary. The assistant may be required by the hearing officer to be present at the disciplinary or superintendent's hearing." N.Y. Comp.Codes R. & Regs. tit. 7, § 251-4.2. While failure to adhere to regulations does not itself give rise to a claim under 42 U.S.C. § 1983, it may constitute evidence of a constitutional deprivation. *See, e.g., Duckett v. Ward,* 458 F.Supp. 624, 627 (S.D.N.Y.1978).

**d. Actions of the Hearing Officer**

With respect to the hearing officer, Irurre, Samuels makes a variety of claims, including the fact that Irurre prohibited Samuels from calling various witnesses and that he was partial. The Court has not been furnished with a copy of the hearing transcript. Because Samuels' claims potentially implicate constitutional rights, and because any holding on this issue requires that the Court make factual determinations, dismissal is inappropriate.

**e. Timeliness of the Hearing**

**\*14** Samuels claims that his due process rights were violated because his misbehavior hearing was held eight days after Samuels was confined following the search of his cell. Where an inmate is confined pending a disciplinary hearing (as was the case here), the hearing must be held within seven days of the confinement unless a later date is authorized by the commissioner or his designee. *See* N.Y. Comp.Codes R. & Regs. tit. 7, § 251-5.1(a). In this case, Samuels' rights were not violated.

The search took place on October 20, 1999, and the hearing occurred on October 27, 1999. Under § 251-5.1, the date of the incident is generally excluded. *See, e.g., Harris v. Goord,* 702 N.Y.S.2d 676 (N.Y.App. Div.3d Dep't 2000) (holding that the fourteen-day period in § 251-5.1(b), which runs from the date of the writing of a misbehavior report, is calculated by excluding the day the report is written). Thus, Samuels' hearing was held within seven days of his detention. Moreover, as Samuels admits, prison officials sought and received permission to begin the hearing on October 27, 1999, as per the requirements of § 251-5.1(a). *See* Ex. L. For these reasons, Samuels' claim with regard to the timeliness of his hearing is dismissed.

**f. Notice**

Defendants reject Samuels' argument that he received inadequate notice of the charges against him. It is unclear from the record what notice Samuels received, either before or during the disciplinary hearing. While the Court is cognizant of the fact that inmates are entitled to fewer due process rights than other citizens, it is possible to read Samuels' allegations as presenting a valid due process claim. The Court notes, for instance, that inmate rule 104.12 provides that "[i]nmates shall not lead, organize, participate, or urge other inmates to participate in work-stoppages, sit-ins, lock-ins, or other actions which may be detrimental to the order of the facility." N.Y. Comp.Codes R. & Regs. tit. 7, § 270.2(B)(5)(iii). The Appellate Division has held that possession of threatening materials alone does not violate the rule because the inmate must actually lead, organize, participate, or urge other inmates to participate, and not merely intend to do so. *See, e.g., Abdur-Raheem v. Goord,* 665 N.Y.S.2d 152, 153 (N.Y.App. Div. 4th Dep't 1997). While Samuels may have possessed the documents, it is unclear whether he received any notice of how he allegedly led, organized, or participated in (or urged others to participate in) a prohibited activity. Because the determination hinges on a factual determination, dismissal is inappropriate.

**C. Retaliation**

Samuels alleges that his misbehavior adjudication was based on the prison authorities' perception that members

Not Reported in F.Supp.2d, 2002 WL 31040370 (S.D.N.Y.)
(Cite as: 2002 WL 31040370 (S.D.N.Y.))

of the NYTS were behind the planned Y2K protest. *See* Complaint, at 3-6. Samuels alleges that the materials seized were not subversive and were of a Christian nature. Defendants move to dismiss the retaliation argument, arguing that the prison authorities' decision is entitled to deference. While this may be true, such deference is inappropriate on a motion to dismiss, particularly given the paucity of the record. Without, for example, a transcript of the hearing, a transcript of the testimony of the confidential informant, or a copy of the allegedly subversive documents, the Court cannot blindly defer to the prison authorities. Consequently, dismissal is inappropriate. Defendants also argue that "even if it was improper to discipline plaintiff for possession of contraband, the evidence of plaintiff's involvement in the unauthorized demonstration provided a valid non-retaliatory basis for the disciplinary sanction and transfer." Reply Brief, at 19. This argument is incorrect for two reasons. First, the argument ignores the fact that the contraband documents and testimony of the confidential informant provide the basis for the prison authorities' finding that Samuels was involved in the demonstration. None of these documents is in the record before the Court; thus deference is inappropriate. Second, this argument ignores the fact that Samuels' punishment was ultimately based on the fact that he had violated two rules. His prison file reflects a guilty adjudication on two counts; also, had Samuels been disciplined for violating only one rule, his penalty would likely have been less.

D. Personal Involvement

**\*15** Defendants correctly note that liability of supervisory officials under 42 U.S.C. § 1983 may not be premised on the doctrine of *respondeat superior*. *See, e.g., Poe v. Leonard,* 282 F.3d 123, 140 (2d Cir.2002); *Emblen v. Port Auth. of New York/New Jersey,* 00 Civ. 8877(AGS), 2002 WL 498634, at \*10 (S.D.N.Y., Mar. 29, 2002). Consequently, a defendant's personal involvement in the alleged constitutional violation is required. *See, e.g., Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 690-95 (1978). Such personal involvement may be proven in a number of ways:

(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995). The Court examines the alleged personal involvement of each defendant in turn.

1. Donald Selsky

Defendants concede Donald Selsky, Director, Special Housing/Inmate Disciplinary Program, was personally involved in the alleged due process violations cited by Samuels. The Court notes that Selsky, acting "on behalf of the commissioner," reviewed and affirmed Samuels' superintendent's hearing and denied Samuels' appeal. Ex. 6, V.

2. Glenn Goord

Defendants argue that Glenn Goord, DOCS Commissioner, has no personal involvement in this case, and that the only link to him in this action is a newspaper article. *See* Reply Brief, at 20-21. This is incorrect, however, since the denial of Samuels' appeal was written by Selsky on behalf of Goord. As noted, defendants concede Selsky's involvement. Goord had a duty to supervise his subordinate who purportedly acted in his name.[FN22] Without further evidence, the Court cannot say as a matter of law that Goord was not personally involved, since personal involvement can include gross negligence "in supervising subordinates who committed the wrongful acts." *Colon,* 58 F.3d at 873.

FN22. Whereas the doctrine of *respondeat superior* involves the legal assignment of liability to a supervisor for the acts of a subordinate, the instant case involves a subordinate who claims to be (and legally is) acting in the name of his

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31040370 (S.D.N.Y.)
(Cite as: 2002 WL 31040370 (S.D.N.Y.))

supervisor.

3. Paul Cecilia

Defendants concede Paul Cecilia's personal involvement.

4. Javier Irurre

Defendants concede Javier Irurre's personal involvement.

5. Sergeant Schwartzman

Defendants concede Sergeant Schwartzman's personal involvement.

6. Dennis Bliden

Defendants allege that Samuels never argues that Bliden had the ability to remedy the alleged constitutional violation. However, Bliden wrote to Samuels in response to his appeal of the misbehavior adjudication, stating, "You may appeal this hearing to the Commissioner in Albany. Until such time as we receive a decision from this office, *I will not modify the disposition.*" Ex. U (emphasis added). Significantly, Bliden did not state that he *could* not modify the disposition but stated that he *would* not. This provides at least *prima facie* evidence that Bliden had the authority to overturn the disposition. While further facts may reveal this to be untrue, at this stage dismissal is inappropriate.

7. Jeffery McKoy

**\*16** Samuels fails to provide any support for McKoy's personal involvement in this action. Indeed, in responding to one of Samuels' appeals, McKoy wrote that "I do not have the authority to overturn Tier 3 dispositions." Ex. R. McKoy does not appear to have been complicit in any alleged deprivation of Samuels' rights, and, in contrast to Bliden, he plainly lacked the authority to overturn the

misbehavior adjudication. Consequently McKoy was not personally involved in the matter and all claims against him are dismissed.

8. Christopher P. Artuz

Christopher P. Artuz is Green Haven's Superintendent. Samuels states that his involvement stems from his failure to respond to a note sent to him. Although the note to Artuz does not appear to be in the record before the Court, it is referenced in a note from Bliden to Samuels. *See* Ex. T ("This is in response to your memo of November 12, 1999 to Superintendent Artuz"). Samuels also alleges that Artuz failed to respond when contacted by Dr. Peter-Raoul and Dr. Webber, who sought to intervene on Samuels' behalf. *See* Opposition Brief, at 27. While it is not clear that Artuz was personally involved, the question of Artuz's involvement in this matter is a factual question. In such cases, dismissal should be denied. As the Second Circuit noted in *Williams v. Smith,* 781 F.2d 319, 324 (2d Cir.1986), "even if [the prison superintendent] did not actively affirm the conviction on administrative appeal, we cannot say, on this record, that as Superintendent [of the prison] he was not directly responsible for the conduct of prison disciplinary hearings [...]."

E. Qualified Immunity

Defendants move to dismiss this action based on the qualified immunity of defendants. As defendants correctly point out, government employees are generally immune from liability for civil damages "when their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Duamutef v. Hollins,* 297 F.3d 108, 111 (2d Cir.2002) (citation omitted). As a preliminary matter, it should be noted that qualified immunity is only a defense to claims for money damages and are not a defense for equitable relief or injunctions. *See, e.g., Charles W. v. Maul,* 214 F.3d 350, 360 (2d Cir.2000). To the extent that Samuels seeks equitable relief, defendants' potential claims of qualified immunity are no bar.

The Court is unable to determine at this time whether the remaining defendants are entitled to qualified immunity in

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31040370 (S.D.N.Y.)
(Cite as: 2002 WL 31040370 (S.D.N.Y.))

this case. The reason is that without having basic documentary evidence, including a transcript of the disciplinary hearing, a transcript of the testimony of the confidential informant, and the documents allegedly seized from Samuels' cell, the Court cannot determine whether these defendants violated Samuels' clearly established constitutional or statutory rights. Because it is a fact-intensive question, it cannot be disposed of at this stage.

V. Conclusion

**\*17** For the reasons set forth above, defendants' motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) and (6) is DENIED with respect to defendants Selsky, Goord, Cecilia, Irurre, Schwartzman, Bliden, and Artuz. Defendants' motion is GRANTED with respect to Jeffery McKoy, and with respect to the issue of DOCS policy regarding the Five Percent Nation of Gods and Earths and with regard to the timeliness of Samuels' misbehavior hearing.

SO ORDERED.

S.D.N.Y.,2002.
Samuels v. Selsky
Not Reported in F.Supp.2d, 2002 WL 31040370 (S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

2015 WL 2120518
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Lafrancis GRAY–DAVIS;
and Myrell Davis, Plaintiffs,
v.
State of NEW YORK; Paul Rigby, Senior Parole
Officer; Tammy Gronau, Parole Officer; Mr. Green,
Parole Officer; Mr. Maher, Parole Officer; Ms.
Delaney, Parole Officer; Mr. Fregoe, Parole Officer;
Ms. Montford, Supervisor Parole Officer; Robert
Butera, Parole Officer; Anthony I Annucci, Acting
Comm'r of Dep't of Corr. and Cmty. Supervision;
Tinam. Stanford, Chair of Bd. of Parole; Randy W.
Blume, Assist. Comm'r of Onondaga Cnty. Dep't
of Corr.; Timothy H. Cowin, Comm'r of Onondaga
Cnty. Dep't of Corr.; Cnty. of Onondaga; Onondaga
Cnty. Dep't of Corr.; City of Jamesville; City of
Syracuse; Syracuse City Police Dep't; John Doe
Nos. 1–4, Parole Officers; John Doe Nos. 5–
15, Syracuse City Police Officers; and John Doe
16, Chief of Syracuse City Police, Defendants.

No. 5:14–CV–1490 (GTS/TWD).
|
Signed May 5, 2015.

**Attorneys and Law Firms**

Lafrancis Gray–Davis, Syracuse, NY, pro se.

DeRoberts Law Firm, Jeffrey DeRoberts, Esq., of Counsel,
Syracuse, NY, for Plaintiff Myrell Davis.

### *DECISION and ORDER*

GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court, in this civil rights action
filed by LaFrancis Gray-Davis and her minor son Myrell
Davis ("Plaintiffs"), against the above-captioned entities
and individuals ("Defendants") arising from two searches
by police and the institution of special conditions by
parole officers between December 2013 and April 2014,
is the Report–Recommendation of United States Magistrate

Thérèse Wiley Dancks recommending that certain of
Plaintiffs' claims be dismissed with prejudice, certain of the
claims be dismissed without prejudice (and with leave to
amend as authorized by the Court), and certain of the claims
survive the Court's initial review of Plaintiffs' Complaint.
(Dkt. No. 6.) Plaintiffs have not filed an objection to the
Report–Recommendation and the deadline in which to do so
has expired. (*See generally* Docket Sheet.)

When *no* objection is made to a report-recommendation,
the Court subjects that report-recommendation to only a
*clear error* review. Fed.R.Civ.P. 72(b), Advisory Committee
Notes: 1983 Addition. When performing such a "clear error"
review, "the court need only satisfy itself that there is no
clear error on the face of the record in order to accept the
recommendation."*Id.: see also Batista v. Walker,* 94–CV–
2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995)
(Sotomayor, J.) ("I am permitted to adopt those sections of
[a magistrate judge's] report to which no specific objection is
made, so long as those sections are not facially erroneous.")
(internal quotation marks and citations omitted).

Here, based upon a review of this matter, the Court can find
no clear error in Magistrate Judge Dancks' thorough Report–
Recommendation. (Dkt. No. 6.) Magistrate Judge Dancks
employed the proper standards, accurately recited the facts,
and reasonably applied the law to those facts. (*Id.*) As a result,
the Report–Recommendation is accepted and adopted in its
entirety for the reasons stated therein.

**ACCORDINGLY,** it is

**ORDERED** that Magistrate Judge Dancks' Report–
Recommendation (Dkt. No. 6) is **ACCEPTED** and
**ADOPTED** in its entirety; and it is further

**ORDERED** that the following claims are *DISMISSED* with
**prejudice** and **without leave to amend:**

(1) all claims against Defendant State of New York;

(2) all claims against Defendant Onondaga County
Department of Corrections;

(3) all claims against Defendant Syracuse City Police
Department;

(4) Plaintiffs' 42 U.S.C. § 1983 claims for money damages
against Defendants Annucci, Stanford, Rigby, Gronau,

Green, Maher, Delaney, Fregoe, Montford, Butera, and John Doe Nos. 1–4;

(5) Plaintiffs' claim for violation of their Fifth and Ninth Amendment rights; and it is further

**ORDERED** that the following claims **shall be *DISMISSED* with prejudice** and without further Order of this Court **UNLESS,** within **THIRTY (30) DAYS** of the date of this Decision and Order, Plaintiffs file an Amended Complaint correcting the pleading deficiencies referenced in Magistrate Judge Dancks' Report–Recommendation:

**\*2** (1) Plaintiffs' claims against Defendant County of Onondaga;

(2) Plaintiffs' claims against Defendant Hamlet of Jamesville (a/k/a City of Jamesville);

(3) Plaintiffs' claims against Defendant City of Syracuse;

(4) Plaintiffs' claims against Defendants Butera, Blume, Cowin and John Doe No. 16; and

(5) Plaintiffs' claims against Defendants Annucci and Stanford (**EXCEPT** for their 42 U.S.C. § 1983 claims for money damages against those two Defendants in their official capacities, which claims again are dismissed with prejudice and without leave to amend); and it is further

**ORDERED** that any Amended Complaint that Plaintiffs chose to file shall be a complete pleading, which will supersede their original Complaint in all respects, and may not incorporate any portion of the original Complaint by reference, in accordance with Local Rule 7.1(a)(4) of the District's Local Rules of Practice; and it is further

**ORDERED** that Plaintiffs' remaining claims—i.e., their claims against Defendants Rigby, Gronau, Green, Maher, Delaney, Fregoe, and Montford ("Remaining Defendants") for violation of Plaintiffs' First, Fourth and Fourteenth Amendment rights—**SURVIVE** the Court's initial review of the Complaint; and it is further

**ORDERED** that the District Court shall issue summonses, along with copies of the Complaint and General Order 25, to the United States Marshal for service upon the remaining Defendants; and it is further

**ORDERED** that counsel for the Remaining Defendants shall file a formal response to the surviving claims in the Complaint in accordance with Federal Rules of Civil Procedure; and it is further

**ORDERED** that Plaintiffs shall take reasonable steps to identify Defendant John Doe Nos. 1–15 and, if necessary, make a motion seeking leave to amend her pleadings to add the proper party; and it is hereby

**ORDERED** that the Clerk of Court serve a copy of this Decision and Order upon Plaintiff LaFrancis Gray–Davis by regular mail.

## *ORDER AND REPORT–RECOMMENDATION*

THÉRÈSE WILEY DANCKS, United States Magistrate Judge.

The Complaint of *pro se* Plaintiff LaFrancis Gray–Davis, on her own and on behalf of her son, Myrell Davis, was received for filing in the Northern District of New York on December 11, 2014, along with an application to proceed *in forma pauperis.*(Dkt. Nos. 1 and 2.) By Order of December 18, 2014, the Court granted Plaintiff's application to proceed *in forma pauperis.*(Dkt. No. 4 at 2–3.) Because Plaintiff, who is not an attorney and not represented by counsel, may not appear on behalf of her minor child, Myrell, *see Cheung v. Youth Orchestra Found., of Buffalo, Inc.,* 906 F.2d 59, 61 (2d Cir.1990), the Court deferred the requisite initial review of the Complaint pursuant to 28 U.S.C. § 1915(e) and stayed the case for ninety days in order to give Plaintiff time to retain counsel, at least for her minor son. *Id.* at 3. Attorney Jeffrey DeRoberts, Esq. filed a Notice of Appearance on behalf of Myrell Davis on January 8, 2015, thereby removing the impediment to initial review of the Complaint. (Dkt. No. 5.)

## I. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

**\*3** Even when a plaintiff meets the financial criteria for *in forma pauperis,*28 U.S.C. § 1915(e) directs that when a plaintiff proceeds *in forma pauperis,*"the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."28 U.S.C. § 1915(e)(2) (B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy, or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir.1998) (citations and internal quotation marks omitted). Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See, e.g., Thomas v. Scully,* 943 F.2d 259, 260 (2d Cir.1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me accusation." *Id.* In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Where a plaintiff proceeds *pro se,* the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir.2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir.1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000).

## II. PLAINTIFF'S COMPLAINT

**\*4** Plaintiff met James D. Davis ("Davis") in July of 2009, when he was on parole supervision, and the couple had a child, Myrell Davis, in 2010. (Dkt. No. 1 ¶¶ at 5 and 6.) Davis was violated by parole supervision on September 22, 2011, and Defendant Senior Parole Officer Paul Rigby ("Rigby"), who allegedly had a vendetta against Plaintiff because of her association with Davis, acted to prevent Plaintiff and Davis from being married at the Onondaga County Justice Center in November of 2011. *Id.* at ¶¶ 7–8.

Plaintiff and Davis were married on November 12, 2012, while Davis was incarcerated, and on July 30, 2013, when Davis was about to be released, Plaintiff was informed by his parole officer, Defendant Ms. Montford ("Montford"), that she and her son and all family members were not permitted to have contact with Davis. *Id.* at ¶¶ 9–10. Included in the special conditions in the Certificate of Release to Parole Supervision signed by Davis on August 6, 2013, was the condition "17. I will not associate in any way or communicate by any means with ... Latesha Dexter and Lafrancis Gray without the permission of the P.O." *Id.* at p. 56. Included in a list of Special Conditions of Release to Parole Supervision in connection with Plaintiff's July 30, 2013, release, signed by Davis on February 24, 2014, were:

> 13(i): I will have no in person contact, or attempt to contact ***Eric Roam, Latesha Dexter and/or LaFrancis Gray–Davis.*** Either in person or members of their immediate family by means of letter, telephone, cell phone, third party, electronic means or any other methods without the knowledge and written permission of my parole officer. Failure to follow this rule is a violation of my parole in an important respect.

> 13(q): I will have contact with any children in common with ***LaFrancis Gray–Davis*** if court ordered only.

*Id.* at pp. 58, 60. Depending on Davis' parole officer, Plaintiff and Davis have at times been able to have contact with one

another and even share a home. Other times they have not. *Id.* at ¶ 12.

On Christmas Eve or Christmas day of 2013, Defendant parole officers John Doe Nos. 1 through 4 searched Plaintiff's home looking for Davis, whom they had reason to believe was there. *Id.* at ¶ 13. Davis was not in the house, and according to Plaintiff, because he was not paroled to her address and was not supposed to be there, the four Doe Defendants had no probable cause to invade her home and privacy and search her house. *Id.*

On March 11, 2014, at approximately 7:45 p.m., while Plaintiff, with Myrell in the car, was giving Davis a ride home, she was pulled over by Defendant Parole Officers Tammy Gronau ("Gronau"), Mr. Green ("Green"), Mr. Maher ("Maher"), Ms. Delaney ("Delaney"), and Mr. Fregoe ("Fregoe"), along with Defendant Syracuse Police Officers John Doe Nos. 5 through 15. *Id.* at ¶ 14. Defendants Gronau and Green searched Plaintiff's car and found several empty beer cans and a folding knife that Plaintiff claims belonged to her. Defendants also stated that Myrell was not in a child safety seat, which Plaintiff contends is untrue. *Id.* Davis was taken into custody. *Id.* According to Plaintiff, the only reason the vehicle was stopped was that she and her son were with Davis. *Id.*

**\*5** On April 1, 2014, Plaintiff received a letter from Defendant Randy W. Blume (Blume"), Assistant Commissioner of the Onondaga County Correctional Facility, stating that due to the special conditions prohibiting Davis from having contact with her and her son, he was restricting Plaintiff from visiting or communicating with Davis by telephone while he was at the facility unless or until the conditions of parole were removed. *Id.* at ¶ 17.

### III. ANALYSIS

Plaintiff's Complaint contains ten causes of action for violation of Plaintiff and her son's right to privacy and freedom of association under the First Amendment; illegal search and seizure in violation of the Fourth Amendment; violation of Plaintiff and her son's right to life, liberty, family, and privacy protected under the Fifth Amendment; violation of Plaintiff and her son's right to privacy and other rights protected under the Ninth Amendment; violation of Plaintiff and her son's right to life, liberty, family, and privacy protected under the Fourteenth Amendment; intentional infliction of emotional distress; negligent infliction of emotional distress; negligence;

supervisory liability, including failure to train, supervise, and control employees, employers, agents and successors; and violation of 42 U.S.C. § 1983. [1] (Dkt. No. 1 at ¶¶ 19–101.) The allegations of wrongdoing by Defendants set forth in each of the causes of action appear to be virtually identical. *Id.*

#### A. State of New York

Plaintiff has named the State of New York as a Defendant. The only allegations directed to the State in the Complaint are conclusory assertions of supervisory liability. (*See, e.g.,* Dkt. No. 1 at ¶ 23.) Plaintiff's claims against the State are barred by sovereign immunity. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The bar precludes claims against the State for both monetary and equitable relief. *See Edelman v. Jordan,* 415 U.S. 651, 667–69, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Therefore, the Court recommends that the action be dismissed with prejudice as against the State of New York on sovereign immunity grounds.

#### B. Municipal Defendants

Plaintiff has named as Defendants the County of Onondaga, City of Jamesville, [2] and the City of Syracuse. The Onondaga County Department of Corrections and Syracuse City Police Department have also been named as Defendants. However, as explained in *Baptista v. Onondaga County Dep. of Corrections,* No. 9:04–CV–0600 (LEK/GHL), 2007 WL 911854, at \* 5, 2007 U.S. Dist. LEXIS 20536, at \* 13 (N.D.N.Y. Mar.22, 2007), the County of Onondaga Department of Corrections and the County of Onondaga "are one in the same the County of Onondaga, a municipal corporation of the State of New York ."Furthermore, "[a] police department is an administrative arm of [a] municipal corporation," and "cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity."*Baker v. Willett,* 42 F.Supp.2d 192, 198 (N.D.N.Y.1999) (citing *Loria v. Town of Irondequoit,* 775 F.Supp. 599, 606 (W.D.N.Y.1990); *see also Dexter v. City of Syracuse,* No. 5:14–CV–0363 (TJM/DEP), 2014 WL 2611384, at \*4, 2014 U.S. Dist. LEXIS 80008, at \*11 (N.D.N.Y. June 11, 2014). Therefore, any claims Plaintiff might have against the County of Onondaga Department of Corrections and City of Syracuse Police Department are properly asserted against the County of Onondaga and City of Syracuse, respectively.

**\*6** Pursuant to the standard for establishing municipality liability laid out in *Monell v. Dep't of Soc. Servs. of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), in order to set forth a cognizable claim for municipal liability under § 1983, a plaintiff must plead and prove that a deprivation of his constitutional rights "was caused by a governmental custom, policy, or usage of the municipality."*Jones v. Town of East Haven,* 691 F.3d 72, 80 (2d Cir.2012) (citing *Monell,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611), *cert denied,* ——— U.S. ———, 134 S.Ct. 125 (2013); *see also Vippolis v. Village of Haverstraw,* 768 F.2d 40, 44 (2d Cir.1985) ("The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer. Second, the plaintiff must establish a causal connection an 'affirmative link' between the policy and the deprivation of his constitutional rights.") (citing *Oklahoma v. Tuttle,* 471 U.S. 808, 824 n. 8, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)) (plurality opinion).

Plaintiff has failed to identify or allege any facts showing the existence of a municipal policy or custom of Onondaga County, the hamlet of Jamesville, or the City of Syracuse which resulted in the deprivation of her and her son's constitutional rights. A municipality may be liable for deprivation of constitutional rights under § 1983 with regard to policies or customs resulting in inadequate training, supervision, or hiring when the failure to train, supervise, or hire amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact. *See City of Canton, Ohio v. Harris,* 489 U.S. 378, 388–89, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). However, Plaintiff's conclusory allegations that Onondaga County, Jamesville, and the City of Syracuse failed to properly hire, supervise, and train subordinates, without supporting factual allegations of, among other things, a policy or custom pursuant to which the alleged action was undertaken, fails to state a claim against those municipalities that is plausible on its face. *See Trombley,* 550 U.S. at 570; *Hall v. Smith,* 170 F. App'x 105, 108 (11th Cir.2006) (affirming dismissal of § 1983 claim against a municipality where plaintiff alleged no factual support for his conclusory statement that the municipality had a policy or custom of grossly inadequate supervision and training of its employees.)

Given the foregoing, the Court recommends that Plaintiff's § 1983 claims be dismissed as against Defendants County of Onondaga, Jamesville, and the City of Syracuse without

prejudice; and be dismissed with prejudice as against the Onondaga County Department of Corrections and the Syracuse City Police Department, given that any claims Plaintiff may be able to plead with regard to the two departments would be properly asserted against the County of Onondaga and City of Syracuse.

## C. Plaintiffs' Official Capacity Claims For Money Damages Against the State Official Defendants

**\*7** Plaintiffs have asserted official capacity claims for money damages under 42 U.S.C. § 1983 against all of the Defendants. (Dkt. No. 1 at p. 9.) The immunity granted the states under the Eleventh Amendment extends beyond the states themselves to state agents and instrumentalities that are effectively arms of the state. (*Woods v. Rondout Valley Cent. School Dist. Bd. of Educ.,* 466 F.3d 232, 236 (2d Cir.2006). The Eleventh Amendment bars all money damages claims against state officials acting in their official capacities. *Kentucky v. Graham,* 473 U.S. 159, 167–68, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). The Eleventh Amendment has been found to bar official capacity claims for money damages against New York Department of Correctional and Community Supervision ("DOCCS") officials and parole officers. *See Tolliver v. New York State Corrections Officers,* No. 99CIV.9555(JGK), 2000 WL 1154311, at \* 2, 2000 U.S. Dist. LEXIS 11531, at \* 7 (S.D.N.Y. Aug.14, 2000) ("All of the defendants in this case are state officials because they are employees of the New York State Department of Correctional Services."); *James v. Suffolk County Correctional Facility,* No. 13–CV–2344 (JFB)(SIL), 2014 WL 4659300, at \*4, 2014 U.S. Dist. LEXIS 131056, at \* 10–11 (E.D.N.Y. Sept. 17, 2014) (official capacity claims for money damages against parole officers are barred by the Eleventh Amendment).

Therefore, the Court recommends that Plaintiff's § 1983 claims for money damages against Defendants Anthony J. Annucci ("Annucci"), Acting Director of DOCCS, Tina M. Stanford ("Stanford"), Chair of the Board of Parole, and all of the Defendant Parole Officers, including Defendants John Doe 1 through 4, in their official capacities be dismissed with prejudice on Eleventh Amendment grounds.

## D. Supervisory Liability
Defendants Annucci, Stanford, Tim Cowan ("Cowan"), Commissioner of the Onondaga County Department of Correction, and John Doe No. 16, Chief of the Syracuse City Police, have all been sued in their supervisory capacities by Plaintiff. [3] (*See, e.g.,* Dkt. No. 1 at ¶ 23.) [4] In the case of

Defendants Annucci and Stanford, the subordinates include the Defendant Parole Officers, including Defendants John Doe 1 through 4. (Dkt. No. 1 at ¶ 23.) Blume is identified as Cowan's subordinate. *Id.* In the case of Defendant John Doe No. 16, the subordinates include Syracuse Police Officers Defendants John Doe Nos. 5 through 15. *Id.*

The law is clear that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."*McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977)."Because vicarious liability is inapplicable to ...§ 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."*Iqbal,* 556 U.S. at 676. ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior."* )."Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement."*Groves v. Davis,* No. 9:11–CV–1317 (GTS/RFT), 2012 WL 651919, at *6, 2012 U.S. Dist. LEXIS 25367, at *22–23 (N.D.N.Y. Feb.28, 2012) (citing *McKinnon,* 568 F.2d at 934); *see also Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003) (a "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections ... in a § 1983 claim") (quoting *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985)). Therefore, "a plaintiff must ... allege a tangible connection between the acts of a defendant and the injuries suffered."*Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

**\*8** The Second Circuit has held that personal involvement by a supervisor necessary to state a claim under § 1983 maybe found where: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring."*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995).

Plaintiff has alleged that Defendants Annucci, Stanford, Cowan, and John Doe 16 failed to properly hire, oversee, supervise, train, and control their subordinates. (Dkt. No. 1 at ¶ 23.) Vague and conclusory claims that a supervisory

official has failed to provide proper training and supervision or created a specific policy, without facts showing personal involvement, are legally insufficient to state a claim under any of the categories identified in *Colon. See Bridgewater v. Taylor,* 832 F.Supp.2d 337, 348 (S.D.N.Y.2011); *White v. Fischer,* No. 9:09–CV–240 (DNH/DEP), 2010 WL 624081, at *6, 2010 U.S. Dist. LEXIS 15492, at *19 (N.D.N.Y. Feb.18, 2010) ("Vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability."); *see also Pettus v. Morgenthau,* 554 F.3d 293, 300 (2d Cir.2009) (same).

Plaintiff has also parroted each of the *Colon* factors as grounds for supervisory liability. *Id.*"Conclusory statements and formulaic recitations of the Colon factors [that are] wholly unsupported by facts," present no factual support for a supervisory liability claim. *Eldridge v. Kenney,* No. 11–CV–6459–FPG, 2014 WL 2717982, at * 3, 2014 U.S. Dist. LEXIS 84437, at * 2–3 (W.D.N.Y. June 16, 2014).

In light of Plaintiff's failure to allege facts of a nonconlusory nature showing personal involvement by Annucci, Stanford, Cowan, and John Doe No. 16 in the alleged violations of Plaintiff and her son's constitutional rights, the Court recommends that Plaintiff's § 1983 claims be dismissed without prejudice as against those Defendants.

**E. Defendant Butera**

Defendant Robert Butera (Butera") is identified as a Parole Officer in Plaintiff's Complaint. (Dkt. No. 1 at p. 4.) With the exception of Plaintiff's inclusion of Butera's name in the conclusory claims of wrongdoing in each of her causes of action, *id.* at ¶ 23, the Complaint is devoid of factual allegations regarding Butera. As noted above, personal involvement in a constitutional deprivation is a prerequisite to an award of damages under § 1983." *McKinnon,* 568 F.2d at 934; *see also Crichlow v. Fischer,* No. 12–cv–7774 (NSR), 2015 WL 678725, at * 9, 2015 U.S. Dist. LEXIS 18812, at * 17 (S.D.N.Y. Feb. 17, 2015) (dismissing defendants from the case upon initial review under 28 U.S.C. § 1915(e) where the plaintiff made no factual allegations regarding personal involvement on their part in the violation of plaintiff's rights). The complete absence of factual allegations of wrongdoing by Bufera warrants dismissal of Plaintiff's state law claims as well. Therefore, the Court recommends that the case be dismissed without prejudice as against Defendant Butera.

## F. Defendant Blume

**\*9** The sole factual allegation in the Complaint against Defendant Blume, the Assistant Director of the Onondaga County Department of Corrections is that he informed Plaintiff that he was restricting Plaintiff from visiting or communicating with Davis by telephone while he was at the facility due to the special conditions prohibiting Davis from having contact with her and her son unless and until the condition of parole was removed. *Id.* at ¶ 17. Inasmuch as there are no factual allegations indicating that Blume was doing anything more than complying with special conditions of release to parol supervision that had been imposed by DOCCS, the Court recommends that the case be dismissed without prejudice as against him.

## G. Plaintiff's Ninth Amendment Claim

Plaintiff claims that the Defendants violated her and her son's right to privacy and other rights guaranteed under the Ninth Amendment. (Dkt. No. 1 at ¶ ¶ 42–49.) The Ninth Amendment provides that "[t]he enumeration in the Constitution of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX. The Ninth Amendment is a "rule of construction" and does not give rise to "individual rights." *Jenkins v. C.I.R.,* 483 F.3d 90, 92–93 (2d Cir.2007) (Ninth Amendment is not an independent source of individual rights but a rule of construction). Therefore, to the extent Plaintiff is asserting a § 1983 claim for an independent violation of the Ninth Amendment, the Court recommends that the claim be dismissed with prejudice as against all of the Defendants.

## H. Plaintiff's State Law Claims for Negligence and Intentional and Negligent Infliction of Emotional Distress

Plaintiff has included state law causes of action for intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence against the Defendants for denying her and her son the benefits that arise from familial association, for subjecting them to the unreasonable search of her home and car, and, in the case of the municipal defendants and Annucci, Stanford, Cowin, and John Doe No. 16, for failing to properly supervise their subordinates.

## 1. *Intentional Infliction of Emotional Distress*

Under New York law, to state a claim for intentional infliction of emotional distress, a plaintiff must plead "(1) extreme

and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal connection between the conduct and injury, and (4) severe emotional distress." *Bender v. City of N.Y.,* 78 F.3d 787, 790 (2d Cir.1996). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Conboy v. AT & T Corp.,* 241 F.3d 242, 258 (2d Cir.2001). The Court finds that the allegations in Plaintiff's Complaint do not show conduct making a plausible showing of intentional infliction of emotional distress by any of the Defendants and recommends that the claim be dismissed without prejudice as to all Defendants.

## 2. *Negligence and Negligent Infliction of Emotional Distress*

**\*10** Although Plaintiff has alleged that the Parole Officer and Syracuse Police Department Defendants intentionally and/or negligently denied her and her son's right to association and subjected them to unreasonable searches and seizures, the factual allegations in the Complaint reveal that Plaintiff's claims are premised on intentional not negligent conduct. A claim for negligent infliction of emotional distress maybe established under either (1) the "bystander theory" or (2) the "direct duty theory." *Baker v. Dorfman,* 239 F.3d 415, 421 (2d Cir.2000). Both theories require an act of negligence and physical injury or the threat of danger, either to the plaintiff or to a close family member. *Id.* To recover under the "bystander theory," the plaintiff must be "threatened with physical harm as a result of the defendant's negligence" and "consequently suffer[ ] emotional injury from witnessing the death or serious bodily injury of a member of [his or her] immediate family." *Mortise v. United States,* 102 F.3d 693, 696 (2d Cir.1966). To recover under the "direct duty" theory, a plaintiff must suffer an emotional injury from defendant's breach of a duty which unreasonably endangered [his or her] own physical safety." *Id.*

The Court finds that Plaintiff's Complaint fails to allege facts stating a plausible claim for either negligence or negligent infliction of emotional distress against Defendants and recommends that the claim be dismissed without prejudice as against all of the Defendants.

## I. Plaintiff's Surviving Claims

Plaintiff's Complaint asserts claims for violation of her and her son's First Amendment right of liberty in their family life and Fourteenth Amendment due process right to intimate

association [5] as a result of the imposition and enforcement of the special conditions of release to parole supervision that prevent Plaintiff and her son from being with Davis, as well as her Fourth Amendment right to be free from unreasonable searches and seizures in connection with the search of her home in December of 2013 and the traffic stop and search of her car on March 11, 2014. (Dkt. No. 1 at pp. 13, 18, and 41.)

Mindful of the Second Circuit's instruction to liberally construe a *pro se* plaintiff's pleadings, *see Sealed Plaintiff,* 537 F.3d at 191, the Court recommends that Plaintiff be permitted to pursue her and her son's First, Fourth, and Fourteenth Amendment claims (first, second and fifth causes of action) against Defendants Rigby, Gronau, Green, Maher, Delaney, Fregoe, Montford, and John Doe Nos. 1–15.

The Court expresses no opinion as to whether Plaintiff's claims can withstand a properly filed motion to dismiss or for summary judgment.

**ACCORDINGLY,** it is hereby

**RECOMMENDED** that the case be dismissed with prejudice as against: (1) Defendant State of New York on sovereign immunity grounds; (2) Defendant Onondaga County Department of Corrections on the grounds it is one and the same with Defendant County of Onondaga; and (3) Defendant Syracuse City Police Department on the grounds that it is not an entity capable of being sued; and it is further

 **\*11** **RECOMMENDED** that the following claims be dismissed with prejudice: (1) Plaintiff's § 1983 claims for money damages against Defendants Annucci, Stanford, Rigby, Gronau, Green, Maher, Delaney, Fregoe, Montford, Butera, and John Doe Nos. 1–4 on Eleventh Amendment grounds; and (2) Plaintiff's claim for violation of her and her son's Fifth and Ninth Amendment rights for failure to state a claim; and it is further

**RECOMMENDED** that the case be dismissed for failure to state a claim, with leave to file an amended complaint as authorized by the District Court as against Defendants: (1) County of Onondaga; (2) Jamesville; (3) City of Syracuse; (4) Bufera; (5) Blume; (6) Cowin; (7) John Doe No. 16; and (8) Annucci and Stanford (except without leave to amend § 1983 official capacity claims for money damages); and it is further

**RECOMMENDED** that the District Court direct service on Defendants Rigby, Gronau, Green, Maher, Delaney, Fregoe,

and Montford of the surviving claims for violation of Plaintiff and her son's First, Fourth, and Fourteenth Amendment rights; and it is further

**RECOMMENDED** that Defendants Rigby, Gronau, Green, Maher, Delaney, Fregoe, and Montford be required to file a formal response to the surviving claims as provided for in the Federal Rules of Civil Procedure subsequent to service of process; and it is further

**RECOMMENDED** that Plaintiff be directed to take reasonable steps to identify Defendants John Doe Nos. 1–15, and, if necessary, make an appropriate motion seeking leave to amend her pleadings to add the proper party; and it is hereby

**ORDERED** that any paper sent by a party to the Court or the Clerk shall be accompanied by a certificate setting forth the date a true and correct copy of it was mailed to all opposing parties or their counsel. *Any letter or other document received by the Clerk or the Court which does not include a certificate of service which clearly states that an identical copy was served upon all opposing parties or their attorneys is to be returned, without processing, by the Clerk.* Plaintiff shall also comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All motions shall comply with the Local Rules of Practice of the Northern District; and it is further

**ORDERED** that the Clerk serve a copy of this Order and Report–Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders,* 557 F.3d 76 (2d Cir.2009) (per curiam). [Editor's Note: Attachments of Westlaw case copies deleted for online display.]

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.* *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72.

 **\*12** Dated: March 27, 2015.

**All Citations**

Slip Copy, 2015 WL 2120518

Footnotes

1       42 U.S.C. § 1983 does not create any independent substantive rights, but rather serves as a vehicle to "redress ... the deprivation of [federal] rights established elsewhere." *Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir.1999).

2       The Court takes judicial notice that Jamesville, New York is a hamlet located within the Town of DeWitt, not a city. (*See* http:// www.townofdewitt.com/LivingDeWitt.aspx last visited on March 24, 2015.)

3       Plaintiff has recommended dismissal of Plaintiff's supervisory claims against the municipal Defendants under *Monell.*

4       Plaintiff has repeated the identical conclusory allegations of supervisory liability against the Defendants in each of her ten causes of action. (*See* Dkt. No. 1 at ¶¶ 23, 30, 38, 46, 54, 62, 69, 76, 83, 90.)

5       Plaintiff has also asserted a due process claim under the Fifth Amendment. (Dkt. No. 1 at p. 21.) However, the due process clause of the Fifth Amendment applies only to actions taken by the federal government, not state or local governments. *See Schweiker v. Wilson,* 450 U.S. 221, 227, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981); *see also Canfield v. Douglas County,* No. 14–cv–00461–KMT, 2014 WL 7186749, at * 5, 2014 U.S. Dist. LEXIS 173224, at * 12–13 (D.Col. Dec.16, 2014) (Fifth Amendment deprivations such as those challenging due process rights to familial association with no allegation of federal involvement are not actionable under the Fifth Amendment).

---

End of Document

© 2016 Thomson Reuters. No claim to original U.S. Government Works.


Not Reported in F.Supp.2d, 2008 WL 4239760 (N.D.N.Y.)
(Cite as: 2008 WL 4239760 (N.D.N.Y.))

**H**
Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Eric MENDOZA, Plaintiff,
v.
M. McGINNIS, Superintendent, Southport Correctional
Facility, et al., Defendants.
**Civil Action No. 9: 05-CV-1124 (TJM/DEP).**

Sept. 11, 2008.

West KeySummary
**Prisons 310** 🔑 **192**

310 Prisons
    310II Prisoners and Inmates
        310II(D) Health and Medical Care
            310k191 Particular Conditions and Treatments
                310k192 k. In General. Most Cited Cases

**Sentencing and Punishment 350H** 🔑 **1546**

350H Sentencing and Punishment
    350HVII Cruel and Unusual Punishment in General
        350HVII(H) Conditions of Confinement
            350Hk1546 k. Medical Care and Treatment.
Most Cited Cases
Prison employees were not deliberately indifferent to an inmate's serious medical needs. The inmate was seen on numerous occasions by infirmary staff. The inmate's disagreement with a prescribed course of treatment and the refusal of prison nurses and nurse practitioners to honor his request to be seen by a prison physician for his back pain did not provide a basis to find a violation of his rights under the Eighth Amendment. U.S.C.A. Const.Amend. 8.

Eric Mendoza, pro se.

Hon. Andrew M. Cuomo, Office of the Attorney General, State of New York, Senta B. Siuda, Esq., Assistant Attorney General, of Counsel, Syracuse, NY, for Defendants.

**DECISION & ORDER**

THOMAS J. McAVOY, Senior District Judge.

*1 This *pro se* action brought pursuant to 42 U.S.C. § 1983 was referred by this Court to the Hon. David E. Peebles, United States Magistrate Judge, for a Report and Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule N.D.N.Y. 72.3(c). The Report and Recommendation dated July 24, 2008 recommended that Defendants' motion for summary judgment be granted and the action dismissed. No objections to the Report and Recommendation have been filed and Plaintiff's time to do so has expired. Furthermore, after examining the record, this Court has determined that the Report and Recommendation is not subject to attack for plain error or manifest injustice. Accordingly, the Court adopts the Report and Recommendation for the reasons stated therein.

It is therefore,

**ORDERED** that Defendants' motion for summary judgment (dkt.# 53) is **GRANTED,** and Plaintiff's complaint is **DISMISSED** in its entirety.

**IT IS SO ORDERED**

*REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4239760 (N.D.N.Y.)
(Cite as: 2008 WL 4239760 (N.D.N.Y.))

Plaintiff Eric Mendoza, a New York State prison inmate who is proceeding *pro se* and *in forma pauperis,* has commenced this action pursuant to 42 U.S.C. § 1983, claiming deprivation of his constitutional rights. In his complaint, plaintiff alleges that the defendants were deliberately indifferent to his serious medical needs by refusing his repeated requests for proper treatment of back pain, migraine headaches, ear aches, and a broken tooth, and on one isolated occasion by giving him the wrong medication, in violation of the Eighth Amendment to the United States Constitution. As relief, plaintiff seeks recovery of not less than six million dollars in damages.

Currently pending before the court is a motion by the defendants seeking the entry of summary judgment dismissing plaintiff's complaint. In their motion defendants assert that as a matter of law the plaintiff cannot establish that any of his health conditions was sufficiently serious to rise to a level of constitutional significance, nor does the evidence support a finding that the defendants were subjectively indifferent to any of his medical needs. Based upon a thorough review of the record now before the court, I find that while some of plaintiff's conditions could potentially be viewed as sufficiently serious to trigger the protections of the Eighth Amendment, no reasonable factfinder could conclude that the defendants were deliberately indifferent to those needs, and therefore recommend that the defendants' motion for summary judgment be granted.

I. *BACKGROUND*[FN1]

> FN1. The following recitation is gleaned from the record now before the court, with all inferences drawn and ambiguities resolved in plaintiff's favor. *Jeffreys v. City of New York,* 426 F.3d 549, 553 (2d Cir.2005); *Wright v. Coughlin,* 132 F.3d 133, 137-38 (2d Cir.1998). To the extent there is any significant controversy regarding facts material to the claims raised in plaintiff's complaint, they will be noted.

Plaintiff is a New York State prison inmate entrusted to the custody of the New York State Department of Correctional Services ("DOCS"). *See generally* Complaint (Dkt. No. 1); *see also* Defendants' Local Rule 7.1(a)(3)

statement (Dkt. No. 53-3) ¶ 1. At the times relevant to his claims plaintiff was designated first to the Southport Correctional Facility ("Southport"), and later the Auburn Correctional Facility ("Auburn"), where he was transferred on November 28, 2003. Complaint (Dkt. No. 1) ¶¶ 3, 12; Felker Aff. (Dkt. No. 53-3) ¶ 38; *see also* Defendants' Motion (Dkt. No. 53-4) Exh. 1.

**\*2** On August 2, 2003, during his confinement at Southport, Mendoza slipped and fell upon entering a shower area while handcuffed, injuring his head, shoulder and back.[FN2,FN3] Complaint (Dkt. No. 1) Attachment ¶ 12; Felker Aff. (Dkt. No. 53-5) ¶ 4 and Exh. A (Plaintiff's Ambulatory Health Records) 8/2/03 entry. Following the accident plaintiff was returned to his cell, and later transported to the prison infirmary where he was seen by Nurse Scobble for his injuries. Complaint (Dkt. No. 1) Attachment ¶ 12; Felker Aff. (Dkt. No. 53-5) ¶ 4. Nurse Scobble administered Tylenol and, after evaluating the plaintiff, provided him with an ice-pack for his head injury and placed him in the facility's hospital unit for observation. Defendants' Motion (Dkt. No. 53-4) Exh. 2, 21:9-21; Felker Aff. (Dkt. No. 53-5) Exhibit A-1. After remaining in the hospital unit for approximately two and one half hours, Mendoza was returned back to his cell.[FN4] Felker Aff. (Dkt. No. 53-5) Exhibit A-1.

> FN2. According to his medical records plaintiff's complaints regarding his back pre-date the shower accident, reaching back at least to June 2, 2003. Kooi Aff. (Dkt. No. 53-6) ¶ 5. Magnetic resonance imaging ("MRI") testing of Mendoza's back conducted on June 25, 2003 revealed the onset of degenerative disc disease. *Id.* ¶ 7 and Exh. B, pp. B-3, B-4. Plaintiff's records further reflect that Mendoza complained of a "sore back" on July 30, 2003, three days before his fall, and at that time was prescribed Ultram for the pain and placed on a list to see a physician. Felker Aff. (Dkt. No. 53-5) ¶ 5 and Exh. A, 7/30/03 and 7/31/03 Entries.

> FN3. While plaintiff now claims to have suffered a broken tooth as a result of the fall, and for purposes of the pending motion that allegation must be credited, plaintiff's medical records make no reference to plaintiff's claim of suffering

Not Reported in F.Supp.2d, 2008 WL 4239760 (N.D.N.Y.)
(Cite as: 2008 WL 4239760 (N.D.N.Y.))

a broken tooth during the fall, nor do they otherwise substantiate that claim.

FN4. Plaintiff asserts that Nurse Scobble told him a doctor would come to his cell in the afternoon to talk with him, but the doctor never appeared to evaluate him. Complaint (Dkt. No. 1), Attachment ¶ 12.

Mendoza alleges that requests made by him on August 4 and 5, 2003 to be seen by a doctor were ignored.FN5 Complaint (Dkt. No. 1) Attachment ¶ 12. On August 6, 2003, after voicing numerous complaints to the floor officer regarding his continuous pain, Mendoza was visited by Nurse Whendon.FN6 Id. During that visit the plaintiff complained of experiencing strong ear pain as a result of his fall in the shower area; defendant Whendon promised to discuss the matter with a prison physician, and prescribed Ultram for plaintiff's pain.FN7 Id.

FN5. There is no entry in the plaintiff's ambulatory health record either documenting sick-call requests or reflecting any request by Mendoza for medical services on August 4 or 5, 2003. Felker Aff. (Dkt. No. 53-5) Exhibit A1-2.

FN6. Plaintiff's health records appear to reflect that he was seen by Nurse Practitioner Northrup on that date, and that it was August 10, 2003 when he was seen by Nurse Whendon. Felter Aff. (Dkt. No. 53-5) ¶¶ 7 & 9 and Exh. A, 8/6/03 & 8/10/03 Entries.

FN7. While given the current procedural posture plaintiff is entitled to the benefit of all inferences and the resolution of all ambiguities in his favor, it nonetheless should be noted that a medical record entry memorializing his discussion with Nurse Ripley on August 8, 2003 reflects that while Mendoza did complain regarding his ears, he claimed not to be experiencing any pain, noting that they "just feel funny." Felker Aff. (Dkt. No. 53-5) Exh. A, 8/8/03 Entry. Plaintiff's medical records entry from the August 6, 2003 visit, which fail to make reference to complaints

of ear pain, confirm that Ultram was prescribed on that date, presumably to address the complaints of back pain lodged during that visit. Id., 8/6/03 Entry.

On August 15, 2003, plaintiff again complained to corrections staff of severe pain in his head, back, shoulders, and teeth, after noticing that the lump on his head was swollen and had become discolored. Complaint (Dkt. No. 1) Attachment ¶ 12. When plaintiff asked to see a doctor, an unidentified corrections sergeant responded that because plaintiff did not appear to be experiencing an emergency situation, he would have to wait until sick-call the next day. Id. On the morning of August 16, 2003, after continuing to experience serious pain, plaintiff was seen by Nurse P. Mills, but was not permitted to see a physician.FN8 Id . Noting that the Ultram which had been prescribed was not working and that plaintiff was also experiencing ear pain, Nurse Mills reported on the medical record entry from that session that plaintiff "needs ear check", discontinued Ultram, and instead prescribed Naprosyn. Felker Decl. (Dkt. No. 53-5) Exh. 1, 8/16/03 Entry.

FN8. While plaintiff's complaint affixes the date of that visit at August 15, 2003, and refers to the medical official who examined him on that date as Nurse Miller, it is apparent from the chronology set forth in that complaint, corroborated by an entry from August 16, 2003 in plaintiff's ambulatory health records, that the visit actually occurred on the latter date, and that the nurse's name is Mills.

A central theme of plaintiff's complaint appears to relate to prison officials' failure to honor his requests to be seen by a prison doctor. In addition to those requests previously discussed, plaintiff's complaint alleges that he requested access to a prison physician on August 15, 16, 23, and 29, 2003, as well as September 2, 4, 11, 16, 18, and 19, 2003. From the time of the accident on August 3, 2003 until his transfer out of Southport on November 24, 2003, Mendoza was not seen by a doctor. Id. Complaint (Dkt. No. 1) Attachment ¶ 12. Plaintiff's medical records also reveal, however, that between the time of his injury on August 2, 2003, and the date of his transfer out of Southport on November 28, 2003, plaintiff was seen on

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4239760 (N.D.N.Y.)
(Cite as: 2008 WL 4239760 (N.D.N.Y.))

twenty-five different occasions by seven different registered nurses and one nurse practitioner ("NP"), and completed six physical therapy sessions. Felker Aff. (Dkt. No. 53-5) ¶¶ 4, 7-9, 11-25, 27-30, 32-37. Those records also reflect considerable efforts on the part of prison medical staff to address plaintiff's back condition, including through the use of physical therapy, pain medication, and a combination of other strategies which included a "front cuff order". Id.

**\*3** Plaintiff's ear condition was also addressed during many of his visits with medical personnel at Southport. On August 27, 2003 NP Northrup, upon checking plaintiff's ears, determined that they were both filled with wax and prescribed Debrox drops to address that condition. Id. ¶ 15 and Exh. A, 8/27/03 Entry. Plaintiff was seen on August 28, 2003 by Nurse Scobble, again complaining of ongoing ear discomfort. Id. ¶ 16. Nurse Scobble similarly observed a wax build-up in both ear canals, and again ordered that plaintiff be provided with Debrox drops to alleviate the condition. Id. and 8/28/03 Entry.

Despite several intervening visits with prison medical personnel, the next reference in plaintiff's health records to his ear condition is contained in a note of a visit on September 24, 2003 with Nurse Preiser, who wrote that plaintiff was complaining of left ear pain and stating that his left ear made a "buzzing" sound. Id. ¶ 29 and 9/24/03 Entry. After being placed on an NP call-out, plaintiff was seen by NP Northrup on that same date; based upon her examination, NP Northrup determined that plaintiff was experiencing a left eustachian tube dysfunction/allergies and prescribed Allegra D to address the condition. Id. ¶ 30 and 9/24/03 Entry. After requesting a refill of the Allegra D on October 13, 2003, plaintiff was seen by Nurse Whendon on October 27, 2003 with residual complaints of left ear pain and an inability to hear. Id. ¶¶ 31, 32 and Exh. A, 10/13/03 and 10/27/03 Entries. On that occasion, an ear check was ordered. Id.

Plaintiff again presented to medical staff at Southport on several subsequent occasions, including November 2, 2003, November 17, 2003, November 23, 2003 and November 24, 2003, complaining of on-going ear pain. Id. ¶¶ 33-36. Plaintiff was prescribed Tylenol following the November 23, 2003 visit, and an ear check was recommended. Id.

On November 24, 2003 Nurse Ripley examined plaintiff's left ear. Felker Aff. (Dkt. No. 53-5) ¶ 37 and Exh. A, 11/25/03 Entry. Determining that the ear canal was red and inflamed and discovering fluid behind the tympanic membrane, Nurse Ripley referred the plaintiff to NP Northrup and ordered a prescription for Amoxicillin. Id.

While his complaint is lacking in specifics on this score, plaintiff maintains that the deficiencies in his medical care continued following his transfer into Auburn on November 25, 2003. Complaint (Dkt. No. 1) Attachment ¶ 12. Plaintiff's medical records, however, reflect a similarly intensive regimen of treatment of the plaintiff by medical personnel at Auburn. Those records show that upon his entry into Auburn Mendoza was examined by Patty Hefrun, RN, who noted prior diagnoses of degenerative disc disease, disc protrusion based upon the June 25, 2003 MRI testing and a recent history of ear pain, and referred plaintiff's records to a physician for review and determination of appropriate medications. Kooi Aff. (Dkt. No. 53-6) ¶ 16 and Exh. A, 11/28/03 Entry. Thereafter, plaintiff was seen by prison medical personnel on a regular basis, and his back and ear conditions were the subject of many of those visits. Id. ¶¶ 17-78. Plaintiff's medical records also reveal that the last complaint registered by plaintiff concerning ear pain came on April 13, 2004, and that on May 17, 2004 he was found by a audiologist to have functional hearing. Id. ¶¶ 77 and Exh. B, p. B-22.

## II. PROCEDURAL HISTORY

**\*4** Plaintiff commenced this action on September 7, 2005, and was thereafter granted leave to proceed in forma pauperis.[FN9] Dkt. Nos. 1, 6. Plaintiff's complaint alleges defendants' deliberate indifference to his medical needs, both initially at Southport and later at Auburn. See generally Complaint (Dkt. No. 1). Named as the defendants in plaintiff's complaint are M. McGinnis, the Superintendent at Southport; J. Burge, the Superintendent of Auburn; Dr. Kooi, a prison doctor at Auburn; and J. Scobble, T. Whendon, Preiser, B. Brandt, P. Miller, and P. Nelson, all of whom are alleged to be registered nurses employed by the DOCS at Southport.[FN10] Dkt. No. 1. ¶

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4239760 (N.D.N.Y.)
(Cite as: 2008 WL 4239760 (N.D.N.Y.))

FN9. Since plaintiff's complaint asserts claims based upon occurrences at both the Southport Correctional Facility, which is situated in the Western District of New York, and at Auburn, located in this district, venue properly lies in the Northern District of New York. *See* 28 U.S.C. § 1391(b) (indicating that "[a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, [may] be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State [or] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred ...").

FN10. On March 14, 2006, in response to defendants' filing of a pre-answer motion seeking the dismissal of the plaintiff's complaint, Senior Judge Thomas J. McAvoy ordered dismissal of plaintiff's claims, without prejudice, against defendants J. Scobble, T. Whendon, Preiser and P. Miller for failure to effect timely service of process. Dkt. No. 37. Despite that ruling, defendant J. Scobble nonetheless remains a defendant since although not reflected in the court's records, she was in fact served in the action.

In April of 2007, Mendoza sought leave to file a second amended complaint, see Dkt. No. 42, attempting to join six additional defendants in the action. [FN11] Dkt. No. 42. Plaintiff's proposed second amended complaint also purported to rename as defendants the individuals previously dismissed from the action, including T. Whendon, Preiser and P. Miller. Plaintiff's motion to file a second amended complaint, which was opposed by the defendants, *see* Dkt. No. 44, was denied by the court on July 20, 2007. Dkt. No. 48.

FN11. An earlier effort by the plaintiff to amend his complaint without court leave was rejected. *See* Dkt. Nos. 8, 10.

On January 15, 2008, defendants M. McGinnis, J. Burge, Dr. Kooi, J. Scobble, and B. Brandt, moved seeking the entry of summary judgment dismissing plaintiff's complaint. Dkt. No. 53. In their motion, the defendants argue that the plaintiff has not properly served two defendants, cannot prove certain defendants' personal involvement in the constitutional violations asserted, and has failed to establish that they were deliberately indifferent to any serious medical need. *Id*. That motion, which plaintiff has opposed, *see* Dkt. No. 55, is now ripe for determination and has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). [FN12] *See also* Fed.R.Civ.P. 72(b).

FN12. In his opposition to defendants' summary judgment motion, plaintiff appears to expand his claim considerably to now challenge the propriety of the DOCS practice of escorting prisoners to showers with their hands restrained behind their backs and also to implicate Corrections Officer Bennett, who accompanied him to the shower area, as having culpability in the matter. See Plaintiff's Memorandum (Dkt. No. 55-3) p. 7. This claim, however, is nowhere contained in plaintiff's complaint, nor is C.O. Bennett named as a defendant in the case. Plaintiff cannot properly now, at the summary judgment stage, interject additional legal arguments or new defendants into the action. *See McAllister v. New York City Police Dep't*, 49 F.Supp.2d 688, 697-68 (S.D.N.Y.1999) (noting that it is inappropriate to raise new claims for first time in opposition to summary judgment); *Carribean Wholesales & Serv. Corp. v. U.S. JVC Corp.*, 963 F.Supp. 1342, 1359 (S.D.N.Y.1997) (asserting that a motion for summary judgment is not the appropriate place to present new claims); *Harvey v. New York City Police Dep't*, No. 93 Civ. 7563, 1997 WL 292112, at *2 (S.D.N.Y. June 3, 1997) (same).

III. *DISCUSSION*

A. *Failure To Serve*

In their motion, defendants initially seek dismissal of plaintiff's claims against two unserved defendants,

Not Reported in F.Supp.2d, 2008 WL 4239760 (N.D.N.Y.)
(Cite as: 2008 WL 4239760 (N.D.N.Y.))

including a John Doe defendant identified in plaintiff's amended complaint only as a corrections sergeant at Southport, and Nurse P. Nelson. In support of their motion defendants correctly note at this procedural juncture in the case any named but unserved defendants, particularly those Doe defendants whose identities have not yet been ascertained, are entitled to dismissal, although without prejudice, in light of the fact that jurisdiction over them is lacking. *See* Fed.R.Civ.P. 4(m).

In this instance, however, defendants' motion is unnecessary. While both sergeant John Doe and Nurse P. Nelson are specifically mentioned by those designations in plaintiff's complaint, and Nurse P. Nelson appears to be specifically identified in the body of that pleading as a "defendant.", *see* Complaint (Dkt. No. 1) Attachment ¶ 12, neither is listed as a defendant in either the caption or the two locations within the complaint where the parties are described. *See id.* § 3 and Attachment ¶¶ 3-11. Since neither Sergeant John Doe nor Nurse P. Nelson appears to have been intended by Mendoza to be named as a defendant in the case, and neither has been served with process or voluntarily intervened in the action, I recommend this portion of defendants' motion be denied as moot.

B. *Summary Judgement Standard*

**\*5** Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, summary judgment is warranted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.,* 391 F.3d 77, 82-83 (2d Cir.2004). A fact is "material", for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Jeffreys v. City of New York,* 426 F.3d 549, 553 (2d Cir.2005) (citing *Anderson* ). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *but see Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 620-21 (2d Cir.1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson,* 477 U.S. at 250 n. 4, 106 S.Ct. at 2511 n. 4; *Security Ins.,* 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party. *Jeffreys,* 426 F.3d at 553; *Wright v. Coughlin,* 132 F.3d 133, 137-38 (2d Cir.1998). Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." *Treglia v. Town of Manlius,* 313 F.3d 713, 719 (2d Cir.2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

C. *Personal Involvement*

In their motion the defendants challenge the sufficiency of plaintiff's allegations regarding the personal involvement of Superintendents McGinnis and Burge, and as well as of Nurse Brandt, arguing that the allegations against those defendants are wholly conclusory and lack specifics connecting them to any constitutional violation alleged in his complaint.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4239760 (N.D.N.Y.)
(Cite as: 2008 WL 4239760 (N.D.N.Y.))

**\*6** Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

### 1. *Nurse B. Brandt*

Plaintiff's complaint fails to elaborate upon Nurse Brandt's role in his medical care at Southport, and in particular the manner in which she was deliberately indifferent to his serious medical needs. The sole mention of that defendant's name in the body of plaintiff's complaint is in a passage in which he alleges, in wholly conclusory fashion and without supporting details, that she and others at Southport and Auburn were deliberately indifferent to his health by failing to provide him with adequate medical care, and additionally that they "intentionally failed to administer proper medication and refused to fulfill any of [his] requests for proper follow up care." Complaint (Dkt. No. 1) Attachment ¶ 13.

In the face of defendants' summary judgment motion, in which they assert the insufficiency of his allegations against Nurse Brandt, Mendoza fails to offer any evidence which would implicate her personal involvement in the deliberate indifference claimed. During his deposition Mendoza was asked to describe Nurse Brandt's involvement in his treatment. Defendants' Motion (Dkt. No. 53-4) Exh. 1 at 53:22-54-2. In response, plaintiff alleged that he spoke with Nurse Brandt complaining of an ear infection on one occasion, at which time she prescribed Antavera, but on that one occasion she would not grant his request to be seen by a prison physician.[FN13] *Id.* This allegation is insufficient to establish Nurse Brandt's role in the medical indifference alleged. *See Schwartz v. Dennison,* 518 F.Supp.2d 560, 573 n. 11 (S.D.N.Y.2007) (Plaintiff's complaint contained no allegations from which it can be inferred that defendants created, or allowed to continue, an unconstitutional

policy); *Graham v. Poole,* 476 F.Supp.2d 257, 261 (W.D.N.Y.2007) ("Plaintiff's conclusory allegation that Poole failed to provide him with adequate medical care is also insufficient to state a claim."). Accordingly, I recommend that this portion of defendants' motion be granted.

> FN13. There is no reference in plaintiff's health records to the drug "Antavera". According to the plaintiff's ambulatory health record, his ear infection was treated with Debrox (ear drops), Amoxicillin, and Allegra D. Felker Affidavit (Dkt. No. 53-5) ¶¶ 16, 30, 37.

### 2. *Superintendents McGinnis and Burge*

Defendants also argue that plaintiff's complaint is devoid of allegations of any personal involvement, or even awareness, on the part of the superintendents at Southport and Auburn regarding the medical treatment which he was receiving at those facilities. Accordingly, defendants assert, it therefore appears that they are being sued by plaintiff solely by virtue of their positions as facility superintendents.

**\*7** A supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor-there is no *respondeat superior* liability under section 1983. *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright,* 21 F.3d at 501. A supervisory official can, however, be liable in one of several ways: 1) the supervisor may have directly participated in the challenged conduct; 2) the supervisor, after learning of the violation through a report or appeal, may have failed to remedy the wrong; 3) the supervisor may have created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) the supervisor may have been grossly negligent in managing the subordinates who caused the unlawful event; or 5) the supervisor may have failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty,* 490 F.3d 143, 152-53 (2d Cir.2007); *see also Richardson,* 347 F.3d at 435; *Wright,* 21 F.3d at 501; *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986). *Richardson,* 347 F.3d at 435 ("[M]ere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4239760 (N.D.N.Y.)
(Cite as: 2008 WL 4239760 (N.D.N.Y.))

of corrections or a prison superintendent in a § 1983 claim.") (citations omitted); *see also, e.g., Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987) (dismissal appropriate where plaintiff does no more than allege that defendant was in charge of prison); *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985) (same).

In his response to defendants' motion plaintiff asserts that his claims against Southport Superintendent McGinnis are tied to his position as having responsibility "for training and over all management of [the] facility", and his contention that accordingly, "he is liable for all deficiencies in his staffs [sic] performance of their official duties of care, custody and control." [FN14] Plaintiff's Memorandum (Dkt. No. 55-3) at 9. While under other circumstances liability on the part of a supervisor can be imputed based upon the acts of subordinate employees, it is well-established that there is no *respondeat superior* liability under section 1983. *See Richardson,* 347 F.3d at 435; *Wright,* 21 F.3d at 501. Similarly, it is also true that a supervisor can under certain circumstances be held accountable for their gross negligence in managing subordinates, or for knowingly tolerating the existence of a policy or custom giving rise to unconstitutional practices, plaintiff has identified no specifics to support such a claim, instead merely making conclusory, unsupported allegations which are simply insufficient to establish liability. [FN15] *See Jean-Laurent v. Wilkinson,* 540 F.Supp.2d 501, 513 (S.D.N.Y.2008) (indicating that plaintiff must allege specific facts of personal involvement to survive summary judgement); *see also Iqbal v. Hasty,* 490 F.3d at 152-53; *Colon v. Coughlin,* 58 F.3d 865, 873-74 (2d Cir.1995).

FN14. Plaintiff's response does not provide any indication as to the basis for his claims against Auburn Superintendent Burge.

FN15. Indeed, in opposition to defendants' motion plaintiff has not even offered any information to indicate the extent, if any, of the supervising responsibilities of a prison superintendent, presumably with little or no medical training, upon medical staff at the prison facility overseen by him or her.

Having carefully reviewed the record in this case I find that plaintiff's claims against those two individuals are predicated exclusively upon their supervisory positions, a conclusion which is buttressed by testimony given during Mendoza's deposition. During his deposition plaintiff asserted that he was suing Southport Superintendent McGinnis not because of any specific denial in medical treatment, but instead because he was the person in charge of the facility. Defendants' Motion (Dkt. No. 53-4) Exh. 2 at 50:8-20. Similarly, plaintiff testified that he was suing Auburn Superintendent Burge because he "is in charge of [the] facility and he had to believe that everything was going straight." *Id.* at 53:22-54-2.

**\*8** In order to defeat the portion of defendants' motion for summary judgment asserting lack of personal involvement, it was incumbent upon plaintiff to present evidence to support an inference that the three defendants implicated in that motion had personal involvement in any deliberate indifference to his medical care. In light of his failure to do so, and reliance instead upon mere conclusory allegations regarding their liability, I recommend a finding that defendants Brandt, McGinnis and Burge are entitled to dismissal based upon lack of personal involvement and recommend the entry of an order granting that portion of defendants' summary judgment motion. *See Kia P. v. McIntyre,* 235 F.3d 749, 763 (2d Cir.2000) ("A plaintiff may not survive a properly asserted motion for summary judgment on the basis of conclusory allegations alone."); *D'Amico v. City of New York,* 132 F.3d 145, 149 (2d Cir.1998); *Quarles v. General Motors Corp.,* 758 F.2d 839, 840 (2d Cir.1985) ("[M]ere conjecture or speculation by the party resisting summary judgment does not provide a basis upon which to deny the motion.").

### D. *Deliberate Medical Indifference*

The centerpiece of defendants' motion is their contention that after surveying the evidence contained in the record the court can only conclude that no reasonable factfinder could find that they were deliberately indifferent to plaintiff's serious medical needs. In their motion, defendants argue both that plaintiff has failed to prove the existence of a serious medical need of constitutional proportions, and that in any event the record belies any claim that they were deliberately indifferent to any such need.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4239760 (N.D.N.Y.)
(Cite as: 2008 WL 4239760 (N.D.N.Y.))

The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble,* 429 U.S. 97, 102, 104, 97 S.Ct. 285, 290, 291, 50 L.Ed.2d 251 (1976); *see also Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1076, 1084 (1986) (citing, *inter alia, Estelle* ). While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement; thus the conditions of an inmate's confinement are subject to Eighth Amendment scrutiny. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994) (citing *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, 2400, 69 L.Ed.2d 59 (1981)).

A claim alleging that prison conditions violate the Eighth Amendment must satisfy both an objective and subjective requirement-the conditions must be "sufficiently serious" from an objective point of view, and the plaintiff must demonstrate that prison officials acted subjectively with "deliberate indifference." *See Leach v. Dufrain,* 103 F.Supp.2d 542, 546 (N.D.N.Y.2000) (Kahn, J.) (citing *Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)); *Waldo v. Goord,* No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M .J.); *see also, generally, Wilson,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271. Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1978; *Leach,* 103 F.Supp.2d at 546 (citing *Farmer* ); *Waldo,* 1998 WL 713809, at *2 (same).

*9 In order to state a medical indifference claim under the Eighth Amendment, a plaintiff must allege a deprivation involving a medical need which is, in objective terms, " 'sufficiently serious' ". *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994) (citing *Wilson,* 501 U.S. at 298, 111 S.Ct. at 2324), *cert. denied sub nom., Foote v. Hathaway,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995). A medical need is serious for constitutional purposes if it

presents " 'a condition of urgency' that may result in 'degeneration' or 'extreme pain'." *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (citations omitted). A serious medical need can also exist where " 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain' "; since medical conditions vary in severity, a decision to leave a condition untreated may or may not be unconstitutional, depending on the facts. *Harrison v. Barkley,* 219 F.3d 132, 136-37 (2d Cir.2000) (quoting, *inter alia, Chance* ). Relevant factors in making this determination include injury that a " 'reasonable doctor or patient would find important and worthy of comment or treatment' ", a condition that " 'significantly affects' " a prisoner's daily activities, or causes " 'chronic and substantial pain.' " *Chance,* 43 F.3d at 701 (citation omitted); *LaFave v. Clinton County,* No. CIV. 9:00CV774, 2002 WL 31309244, at *2-*3 (N.D.N.Y. Apr.3, 2002) (Sharpe, M.J.).

Deliberate indifference, in a constitutional sense, exists if an official knows of and disregards an excessive risk to inmate health or safety; the official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1979; *Leach,* 103 F.Supp.2d at 546 (citing *Farmer* ); *Waldo,* 1998 WL 713809, at *2 (same).

1. *Serious Medical Need*

a) *Broken Tooth*

Among plaintiff's medical complaints are those surrounding defendants' alleged failure to treat a broken tooth which, although not referenced in any of the medical reports following that incident, is alleged to have occurred during the course of the shower incident on August 2, 2003. While in the memorandum in support of their summary judgment motion defendants devote no attention to plaintiff's broken tooth, they seemingly argue that it does not constitute a serious medical need.

Under certain circumstances a dental condition can constitute a serious medical need. *See Bennett v. Erie*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4239760 (N.D.N.Y.)
(Cite as: 2008 WL 4239760 (N.D.N.Y.))

*County Holding Ctr. Med. Dep't),* No. 03-CV-6393P, 2006 WL 897817, at *6 (W.D.N.Y. Mar.31, 2006) (holding that dental infection over nine month period constituted serious medical need); *see also Harrison v. Barkley,* 219 F.3d 132, 137 (2d Cir.2000) ("[B]ecause a tooth cavity will degenerate with increasingly serious implications if neglected over sufficient time, it presents a 'serious medical need' within the meaning of our case law."). Dental conditions, like all medical conditions, can vary in severity and, if left untreated, can support an Eighth Amendment claim depending on the specific facts of the case. *See Chance,* 143 F.3d at 703 ("[A] cognizable claim regarding inadequate dental care, like one involving medical care, can be based on various factors, such as the pain suffered by the plaintiff ...."); *see also Boyd v. Knox,* 47 F.3d 966, 969 (8th Cir.1995) (three-week delay in dental treatment aggravated problem); *Fields v. Gander,* 734 F.2d 1313, 1314-15 (8th Cir.1984) ("severe pain" due to infected tooth); *cf. Dean v. Coughlin,* 623 F.Supp. 392, 404 (S.D.N.Y.1985) (holding "dental needs-for fillings, crowns, and the like-are serious medical needs as the law defines that term"). Thus, for example, a tooth cavity has been held to constitute a degenerative condition in light of the fact that, if left untreated indefinitely "it is likely to produce agony and to require more invasive and painful treatments, such as root canal therapy or extraction." *Harrison,* 219 F.3d at 137 (citation omitted).

**10** In this instance, by contrast, plaintiff asserts the existence of a broken tooth, and does not allege either that it has caused him to experience extreme pain or the likelihood, that if left untreated, his broken would have resulted in degeneration. Indeed, during his deposition Mendoza testified that the pain associated with his broken tooth diminished after medication was prescribed, and that when he complained to a prison nurse regarding the tooth she made an appointment with a dentist who, after determining that it could not be saved, extracted it without causing additional pain. Defendants' Motion (Dkt. No. 53-4) Exh. 1 at 59:5-60:9. Accordingly, I recommend a finding that no reasonable factfinder could conclude that plaintiff's broken tooth represents a medical condition of constitutional significance. *See Chance,* 143 F.3d at 703 (indicating that the factors to consider in determining if dental problems raise to the level of constitutional significance are whether plaintiff suffers from severe pain, deterioration of teeth, or inability to engage in normal activities) (internal citations omitted).

b) *Back Pain and Migraine Headaches*

While noting a conflict among the various court decisions which address the issue, defendants argue that Mendoza's back condition does not rise to a level sufficient to trigger the protections of the Eighth Amendment.[FN16] The question of whether chronic back pain can rise to a level of constitutional significance is dependent upon the circumstances of the particular case presented. In this instance, given plaintiff's diagnosed condition of degenerative disc disease, and resolving all ambiguities in plaintiff's favor, I conclude that a reasonable factfinder could find that the condition constitutes a serious medical need. *See Guarneri v. Hazzard,* No. 06-CV-0985, 2008 WL 552872, at *6 (N.D.N.Y. Feb. 27, 2008) ("[s]evere back pain, especially if lasting an extended period of time, can amount to a 'serious medical need' under the Eighth Amendment.") (citing *Nelson v. Rodas,* No. 01-CV-7887, 2002 WL 31075804, at *14 (S.D.N.Y. Sept.17, 2002)); *Faraday v. Lantz,* No. 03-CV-1520, 2005 WL 3465846, at *5 (D. Conn. Dec 12, 2005) (holding that persistent complaints of "lower back pain caused by herniated, migrated discs [and] sciatica ..." leading to severe pain constitutes a serious medical need.).

FN16. In presenting this argument, defendants fail to address plaintiff's migraine headaches, which can also constitute a serious medical need. *Moriarity v. Neubold,* No. 02-CV-1662, 2004 WL 288807, at *2 n. 2 (D.Conn. Feb. 10, 2004) (suggesting plaintiff's migraine headaches constituted a serious medical need warranting Eighth Amendment protection since they can be "extremely painful and debilitating"); *O'Bryan v. Sedgwick County,* No. 98-3308, 2000 WL 882516, at *5 (D.Kan. June 12, 2000) (assuming plaintiff's migraine headaches, for which he was prescribed medication, was a serious medical need under the Eighth Amendment); *but see Rodriguez v. Mercato,* No. 00 Civ. 8588, 2002 WL 1997885, and *2-3, 8 (S.D.N.Y. Aug, 28, 2002) (migraines and back pain not "sufficiently serious" to implicate the Eighth Amendment)

c) *Ear Pain*

Not Reported in F.Supp.2d, 2008 WL 4239760 (N.D.N.Y.)
(Cite as: 2008 WL 4239760 (N.D.N.Y.))

As is true of back pain, the cases addressing the issue of whether an ear condition, including an infection, may constitute a serious medical need for purposes of the Eighth Amendment are similarly equivocal and fact-specific. *Compare Duffield v. Jackson,* No. CIV-07-90-R, 2007 WL 4210863, at *13 (W.D.Okla. Nov.27, 2007) (assuming that the plaintiff's ear infection, and ear pain was a sufficiently serious condition under the Eighth Amendment); *Golden v. Berge,* No. 03-C-0403, 2003 WL 23221483, at *6 (W.D.Wis. Sept.25, 2003) (finding that plaintiff's allegation that he suffered severe pain in his ear as a result of an ear infection was sufficient to suggest that he had a serious medical need) *with Feazell v. Augusta County Jail,* 401 F.Supp. 405, 407 (D.Va.1975) (ear infection found not to constitute a serious medical need for constitutional purposes). Given this conflict, and resolving all ambiguities in plaintiff's favor, I am unable to conclude, as defendants argue, that plaintiff's ear pain did not constitute a serious medical need.

2. *Deliberate Indifference*

**\*11** Even assuming that any of plaintiff's medical conditions arises to the level of a serious medical need, the record nonetheless is devoid of evidence from which a reasonable factfinder could conclude that defendants were indifferent to that need. A review of plaintiff's medical records from both Southport and Auburn, which are comprehensive, fail to substantiate plaintiff's claim that his complaints were ignored and medical treatment was withheld. Instead, those records reveal at times intense regimens of testing, prescription of medication, use of physical therapy, and other strategies employed by prison medical officials in an effort to address plaintiff's conditions. The records also show that during the relevant periods he was seen frequently by medical staff at Southport and Auburn. Particularly given the extent of efforts on the part of medical personnel at those facilities plaintiff's allegations, even when liberally construed, fall far short of demonstrating indifference by prison officials to his medical needs.

Plaintiff's quarrel with the medical treatment received at Southport appears to center upon his disagreement with chosen courses of treatment and the refusal of prison nurses and nurse practitioners to honor his request to be seen by a prison physician. Unfortunately for the plaintiff, mere disagreement by a prison inmate with a prescribed course of treatment does not provide a basis to find a violation of inmate's rights under the Eighth Amendment. *Estelle,* 429 U.S. at 105-06, 97 S.Ct. at 201-02; *Chance,* 143 F.3d at 703; *Ross v. Kelly,* 784 F.Supp. 35, 44 (W.D.N.Y.), *aff'd,* 970 F.2d 896 (2d Cir.), *cert. denied,* 506 U.S. 1040, 113 S.Ct. 828, 121 L.Ed.2d 698 (1992). Determinations made by medical providers within their discretion are given a "presumption of correctness" when it concerns the care and safety of patients. *Perez v. County of Westchester,* 83 F.Supp.2d 435, 440 (S.D.N.Y.2000) (citing *Kulak v. City of New York,* 88 F.3d 63, 77 (2d Cir.1996)). As for plaintiff's claims that he should have been permitted to see a doctor at his insistence, it should be noted that the Eighth Amendment, while prohibiting cruel and unusual punishment, does not guarantee a prison inmate unfettered access, at his or her insistence, to a prison physician. *See Wandell v. Koenigsmann,* No. Civ.A. 99-8652, 2000 WL 1036030, at *3 (S.D.N.Y. July 27, 2000) (indicating that as long as the medical care provided was adequate, there is no Eighth Amendment violation); *Church v. Hegstrom,* 416 F.2d 449, 450-51 (2d Cir.1969) (maintaining that medical professionals have wide discretion in treating prisoners, and section 1983 was not designed to permit the federal courts to sit as the final arbiter of the ordinary medical practices of state prisons). In this instance the record reflects that plaintiff was seen at appropriate intervals by medical personnel at Southport, and that those personnel, utilizing their discretion, determined whether it was necessary for the plaintiff to be seen by a physician. Accordingly, the record yields no evidence from which a factfinder could conclude that medical officials at Southport were deliberately indifferent to plaintiff's medical needs.

**\*12** Turning to his period of incarceration at Auburn, Mendoza asserts that while there, Dr. Kooi treated him in a "poor manner" and he was unhappy with Dr. Kooi's conservative course of treatment. Defendants' Motion (Dkt. No. 53-4) Exhibit 1, 54:3-7. Plaintiff also disagreed with the reduced level of pain medication prescribed for him by Dr. Kooi. *Id.* at 45:13-46:17. The records reveal that Dr. Kooi examined the plaintiff on eleven separate occasions over a sixteen month period, and additionally referred him to an audiologist, a neurologist, and a physical therapist, and requested repeat MRI testing of plaintiff's back. Kooi Aff. (Dkt. No. 53-6) ¶¶ 21, 24, 29, 33, 34, 39, 45, 50, 54, 56, 59, 65, 67. In addition, Dr.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4239760 (N.D.N.Y.)
(Cite as: 2008 WL 4239760 (N.D.N.Y.))

Kooi prescribed for the plaintiff a range of different pain and anti-inflammatory medications in order to find which medications provided him the most relief for his conditions, and continued to monitor his progress at regular intervals.

The question of what diagnostic techniques and treatments should be administered to an inmate is a "classic example of a matter for medical judgment"; accordingly, prison medical personnel are vested with broad discretion to determine what method of care and treatment to provide to their patients. *Estelle,* 429 U.S. at 107, 97 S.Ct. at 293; *Chance,* 143 F.3d at 703; *Rosales v. Coughlin,* 10 F.Supp.2d 261, 264 (W.D.N.Y.1998). Moreover, plaintiff's disagreement over the level of pain medication, without more, is insufficient to avoid dismissal of the plaintiff's claim; "[r]ather, to prevail on a claim involving choices between alternative course of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.' " *Toguchi v. Chung,* 391 F.3d 1051, 1058 (9th Cir.2004) (citing and quoting *Jackson v. McIntosh,* 90 F.3d 330, 332 (9th Cir.1996)).

Based upon the foregoing, I find that no reasonable factfinder could conclude that any of the remaining defendants named in plaintiff's complaint were deliberately indifferent to plaintiff's serious medical needs.[FN17]

FN17. Among plaintiff's complaints is a claim that on or about October 20, 2003 he was administered medication meant for another inmate. Complaint (Dkt. No. 1) Attachment ¶ 12. Because plaintiff has not elaborated regarding the incident, either in his complaint or in his responsive motion papers, and fails to identify the nurse involved, nor does he offer any evidence to indicate that the incident was the result of an intentional act, it appears that at best the matter involves a mistake or negligence which would not suffice to support an Eighth Amendment claim. *See Hudson v. Clark,* 319 F.Supp.2d 347, 352 (W.D.N.Y.2004); *see also Daniels v. Williams,* 474 U.S. 327, 330-31, 106 S.Ct. 662, 664-65, 88 L.Ed.2d 662 (1986)

(stating that mere negligence on the part of state officials is not actionable under section 1983 and does not work a constitutional deprivation by itself).

## IV. *SUMMARY AND RECOMMENDATION*

A thorough review of the comprehensive record now before the court fails to disclose evidence from which a reasonable factfinder could conclude that defendants McGinnis, Burge, and Brandt were personally involved in the constitutional deprivations allegedly experienced by the plaintiff. Additionally, the record is lacking in evidence from which a reasonable factfinder could conclude that defendants Nurse Scobble and Dr. Kooi were deliberately indifferent to plaintiff's serious medical need. Accordingly, it is hereby

RECOMMENDED, that defendants' motion for summary judgment dismissing plaintiff's complaint (Dkt. No. 53) be GRANTED, and that plaintiff's complaint be DISMISSED in its entirety.

NOTICE: pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report-recommendation. Any objections shall be filed with the clerk of the court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

**\*13** It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

N.D.N.Y.,2008.
Mendoza v. McGinnis
Not Reported in F.Supp.2d, 2008 WL 4239760 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4239760 (N.D.N.Y.)
(Cite as: 2008 WL 4239760 (N.D.N.Y.))

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



LEXSEE 1995 U.S.DIST. LEXIS 7136

**MINA POURZANDVAKIL, Plaintiff, -against- HUBERT HUMPHRY, JUDISICIAL SYSTEAM OF THE STATE OF MINNESOTA AND OLMESTED COUNTY COURT SYSTEAM, AND STATE OF MINNESOTA, SAINT PETER STATE HOSPITAL, DOCTOR GAMMEL STEPHELTON, ET EL ERICKSON, NORTH WEST BANK AND TRUST, OLMESTED COUNTY SOCIAL SERVICE, J.C. PENNY INSURNCE, METMORE FINICIAL, TRAVELER INSURNCE, COMECIAL UNION INSURNCE, HIRMAN INSURNCE, AMRICAN STATE INSURNCE, FARMERS INSURNCE, C. O BROWN INSURNCE, MSI INSURNCE, STEVEN YOUNGQUIST, KENT CHIRSTAIN, MICHEAL BENSON, UNITED AIRLINE, KOWATE AIRLINE, FORDMOTOR CRIDITE, FIRST BANK ROCHESTER, GEORGE RESTWICH, BRITISH AIRWAYS, WESTERN UNION, PRUDENIAL INSURNCE, T.C.F. BANK, JUDGE SANDY KIETH, JUDGE NIERGARI, OLMESTEAD COUNTY JUDGERING, JUDGE MORES, JUDGE JACOBSON, JUDGE CHALLIEN, JUDGE COLLIN, JUDGE THOMASE, JUDGE BUTTLER, JUDGE MORKE, JUDGE MOWEER, SERA CLAYTON, SUSAN MUDHAUL, RAY SCHMITE, Defendants.** [1]

1   Names in the caption are spelled to reflect plaintiffs complaint.

**Civil Action No. 94-CV-1594**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF NEW YORK**

*1995 U.S. Dist. LEXIS 7136*

**May 22, 1995, Decided
May 23, 1995, FILED**

## CASE SUMMARY:

**PROCEDURAL POSTURE:** Plaintiff filed a complaint accusing defendants with kidnapping plaintiff and her daughter, torturing plaintiff in the Mayo Clinic, and causing plaintiff and her daughter to suffer physically, financially, and emotionally. Certain defendants sought vacation of the defaults entered against them without proper service, some sought dismissal of the complaint, and some sought both vacation of the defaults and dismissal.

**OVERVIEW:** Plaintiff served defendants by certified mail. The court determined that such service was not authorized under federal law or under either New York or Minnesota law. Additionally, plaintiff's extraterritorial service of process was not effective under *Fed. R. Civ. P.*

*4(k)*. Defendants were not subject to federal interpleader jurisdiction, and they were not joined pursuant to *Fed. R. Civ. P. 14* or *Fed. R. Civ. P. 19*. No federal long-arm statute was argued as a basis for jurisdiction, and the alleged harm did not stem from acts in New York for jurisdiction under *N.Y. C.P.L.R. § 302(a)*. The complaint showed no basis for subject matter jurisdiction against defendants that were insurance companies with no apparent relationship to claims of rape, torture, harassment, and kidnapping, and the court found that no basis for supplemental jurisdiction under *28 U.S.C.S. § 1367(a)* existed. Venue was clearly improper under *28 U.S.C.S. § 1391(b)* because no defendant resided in the district and none of the conduct complained of occurred there. Plaintiff's claims of civil rights violations were insufficient because her complaint was a litany of general conclusions, not specific allegations of fact.

**OUTCOME:** The court vacated all defaults. The court dismissed plaintiff's complaint against all moving and non-moving defendants. The dismissal of the complaint against certain defendants premised on the court's lack of power either over the person of the defendant or the subject matter of the controversy was without prejudice, but dismissals against the remaining defendants were with prejudice. Requests for sanctions and attorney's fees were denied.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Service of Process > Methods > Residential Service*
*Civil Procedure > Pleading & Practice > Service of Process > Methods > Service Upon Agents*
*Governments > Federal Government > Employees & Officials*
[HN1] Under the Federal Rules of Civil Procedure, service on an individual may be made by (1) delivery to the named defendant; or (2) delivery to a person of suitable age and discretion at the defendant's dwelling house or usual place of abode; or (3) delivery to an agent authorized by law or by the defendant to receive service of process. *Fed. R. Civ. P. 4(e)(2)*. Service on an individual also can be accomplished through a method authorized by the state in which the district court sits or in which the individual is located. *Fed. R. Civ. P. 4(e)(1)*.

*Business & Corporate Law > Agency Relationships > Agents Distinguished > General Overview*
*Civil Procedure > Pleading & Practice > Service of Process > Methods > Mail*
*Civil Procedure > Pleading & Practice > Service of Process > Methods > Service Upon Corporations*
[HN2] Service on a corporation may be accomplished in a judicial district of the United States (1) pursuant to a method authorized by the law of the state in which the court sits or in which the corporation is located; or (2) by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by statute to receive service and, if the statute so requires, by also mailing a copy to the defendant. *Fed. R. Civ. P. 4(h)(1), 4(e)(1)*.

*Civil Procedure > Pleading & Practice > Service of Process > Methods > General Overview*
[HN3] Neither New York nor Minnesota law authorizes personal service on an individual or corporation by certified mail. *N.Y. C.P.L.R. §§ 308, 311* (Supp. 1995); *N.Y. Bus. Corp. Law § 306* (Supp. 1995); *Minn. Stat. § 543.08* (1995); Minn. R. 4.03 (1995).

*Civil Procedure > Pleading & Practice > Service of Process > Methods > Mail*
*Civil Procedure > Pleading & Practice > Service of Process > Time Limitations > General Overview*
*Governments > Local Governments > Claims By & Against*
[HN4] Service on states, municipal corporations, or other governmental organizations subject to suit can be effected by (1) delivering a copy of the summons and complaint to the state's chief executive officer; or (2) pursuant to the law of the state in which the defendant is located. *Fed. R. Civ. P. 4(j)(2)*. Minnesota law does not authorize service on a governmental entity by certified mail. Minn. R. 4.03(d), (e) (1995).

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
*Civil Procedure > Parties > Interpleaders > General Overview*
[HN5] A plaintiff's extraterritorial service of process in New York can be effective only under any of the following circumstances: (1) if defendants could be subjected to the jurisdiction of a court of general jurisdiction in New York state; (2) if the defendant is subject to federal interpleader jurisdiction; (3) if the defendant is joined pursuant to *Fed. R. Civ. P. 14* or *Fed. R. Civ. P. 19* and is served within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; (4) if a federal statute provides for long-arm jurisdiction; or (5) if plaintiff's claims arise under federal law and the defendants could not be subject to jurisdiction in the courts of general jurisdiction in any state of the United States. *Fed. R. Civ. P. 4(k)*.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
[HN6] *N.Y. C.P.L.R. § 302(a)* provides that in order to obtain jurisdiction over a non-domiciliary, the plaintiff must show both certain minimal contacts between the defendant and the state such as transacting any business in the state and that the harm plaintiff suffered springs from the act or presence constituting the requisite contact.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General*

*Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Pendent Claims*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Same Case & Controversy*
[HN7] *28 U.S.C.S. § 1367(a)* requires a relationship between the state and federal claims for pendent jurisdiction so that they form part of the same case or controversy.

*Civil Procedure > Jurisdiction > Diversity Jurisdiction > Citizenship > General Overview*
*Civil Procedure > Venue > Multiparty Litigation*
[HN8] See *28 U.S.C.S. § 1391(a)*.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Federal Questions > General Overview*
*Civil Procedure > Venue > Multiparty Litigation*
[HN9] See *28 U.S.C.S. § 1391(1)*.

*Civil Procedure > Venue > Federal Venue Transfers > Improper Venue Transfers*
*Civil Procedure > Venue > Individual Defendants*
*Civil Procedure > Venue > Multiparty Litigation*
[HN10] Where venue is laid in the wrong district, the court shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought. *28 U.S.C.S. § 1406(a)*.

*Civil Procedure > Venue > Motions to Transfer > General Overview*
*Civil Procedure > Judicial Officers > Judges > Discretion*
*Governments > Legislation > Statutes of Limitations > General Overview*
[HN11] The purpose of the court's discretionary authority to transfer rather than dismiss in cases of improperly laid venue is to eliminate impediments to the timely disposition of cases and controversies on their merits.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Motions to Dismiss*
[HN12] Where a court has already dismissed against the moving parties on jurisdictional grounds, it has no power to address a *Fed. R. Civ. P. 12(b)(6)* issue.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims*

*Civil Rights Law > General Overview*
[HN13] Complaints that rely on civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights instead of a litany of general conclusions that shock but have no meaning.

*Civil Procedure > Parties > Self-Representation > Pleading Standards*
[HN14] A pro se plaintiff's complaint must be construed liberally and should be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims*
*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > General Overview*
*Civil Procedure > Parties > Self-Representation > Pleading Standards*
[HN15] Even pro se complaints must show some minimum level of factual support for their claims.

*Civil Procedure > Parties > Self-Representation > General Overview*
*Civil Procedure > Counsel > Appointments*
*Civil Rights Law > Prisoner Rights > Prison Litigation Reform Act > Claim Dismissals*
[HN16] The United States Supreme Court explicitly has acknowledged a district court's power under *28 U.S.C.S. § 1915(d)* to dismiss as frivolous a complaint that lacks an arguable basis either in law or in fact. The Supreme Court has explicitly declined to rule, however, on whether a district court has the authority to dismiss sua sponte frivolous complaints filed by non-indigent plaintiffs. The law in the district of New York is that a district court may sua sponte dismiss a frivolous complaint even if the plaintiff has paid the filing fee.

COUNSEL: [*1] HUBERT H. HUMPHREY, III, Attorney General of the State of Minnesota, Attorney for Hubert H. Humphry, III, Judicial System of the State of Minnesota, St. Peter Regional Treatment Center, Gerald Gammell, MD, William Erickson, MD, Thomas Stapleton, MD, the Honorable James L. Mork, Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen, and Judge Lawrence Collins, St. Paul, MN, OF COUNSEL: JEROME L. GETZ, Assistant Attorney General.

CONDON & FORSYTH, P.C., Attorneys for British Airways, P.L.C. and Kuwait Airways Corp., New York, NY, OF COUNSEL: STEPHEN J. FEARON, ESQ., MICHAEL J. HOLLAND, ESQ.

DUNLAP & SEEGER, P.C., Attorneys for Olmsted County, Raymond Schmitz, Susan Mundahl, Norwest Bank Minnesota, N.A. (the Northwest Bank & Trust), C.O. Brown Agency, Inc., Rochester, MN, OF COUNSEL: GREGORY J. GRIFFITHS, ESQ.

ARTHUR, CHAPMAN, McDONOUGH, KETTERING & SMETAK, P.A., Attorneys for J.C. Penney Insurance Co. and Metropolitan Insurance Co., Minneapolis, MN, OF COUNSEL: EUGENE C. SHERMOEN, JR., ESQ.

SHAPIRO & KREISMAN, Attorneys for Metmor Financial, Inc., Rochester, NY, OF COUNSEL: JOHN A. DiCARO, ESQ.

COSTELLO, COONEY & FEARON, Attorneys [*2] for Travelers Insurance Companies; Hirman Insurance; Commercial Union Insurance Companies, Syracuse, NY, OF COUNSEL: PAUL G. FERRARA, ESQ., ROBERT J. SMITH, ESQ.

SMITH, SOVIK, KENDRICK & SUGNET, P.C., Attorneys for American States Insurance Co. and Prudential Insurance Co., Syracuse, NY, OF COUNSEL: THOMAS N. KAUFMANN, ESQ.

STEVEN C. YOUNGQUIST, ESQ., Pro Se, Rochester, MN.

THOMAS J. MARONEY, United States Attorney, Attorney for Michael Benson, Postmaster, Northern District of New York, Syracuse, NY, OF COUNSEL: WILLIAM F. LARKIN, Assistant United States Attorney.

GEORGE F. RESTOVICH & ASSOCIATES, Attorneys for George F. Restovich, Esq., Rochester, MN, OF COUNSEL: GEORGE F. RESTOVICH, ESQ.

CONBOY, McKAY, BACHMAN & KENDALL, L.L.P., Attorneys for Western Union, Watertown, NY, OF COUNSEL: GEORGE K. MYRUS, ESQ.

RICHARD MAKI, Pro Se, Rochester, MN.

**JUDGES:** ROSEMARY S. POOLER, UNITED STATES DISTRICT JUDGE

**OPINION BY:** ROSEMARY S. POOLER

**OPINION**

*MEMORANDUM-DECISION AND ORDER*

**INTRODUCTION**

In the four and one-half months since she filed this action, plaintiff Mina Pourzandvakil has filed three amended complaints and ten motions. She also has sought and received [*3] entry of default against ten defendants, none of whom she properly served. She twice has sought and been denied temporary restraining orders. She has included in her action defendants with no apparent connection to this forum, that were vindicated in actions she brought in other forums.

In response, several individual defendants and groups of defendants have filed a total of twelve motions, some seeking vacation of the defaults entered against them, some seeking dismissal and others seeking both. We grant defendants' motions insofar as they seek vacation of the clerk's entries of default and dismissal of the complaint. We vacate *sua sponte* the entries of default against the non-moving defendants. Finally, we dismiss the complaint in its entirety against all defendants.

**BACKGROUND**

Pourzandvakil commenced this action by filing a complaint in the Office of the Clerk on December 9, 1994 (Docket No. 1). The complaint named as defendants the Attorney General of the State of Minnesota, the State of Minnesota and Olmsted County, Minnesota judicial systems, various Minnesota judges and prosecutors, St. Peter State Hospital in Minnesota and various doctors who worked at St. Peter's. [*4] Without specifying the time or defendant involved, the complaint accused the defendants of kidnapping Pourzandvakil and her daughter, torturing Pourzandvakil in the Mayo Clinic since April 1985, and causing Pourzandvakil and her daughter to suffer physically, financially and emotionally. Pourzandvakil twice requested that we issue a temporary restraining order. We denied both requests. *See* Order entered December 14, 1994 (Docket No. 4) and Memorandum-Decision and Order entered December 22, 1994 (Docket No. 6).

On December 27, 1994, Pourzandvakil filed an amended complaint (the "first amended complaint") (Docket No. 7) that appears to differ from the original complaint by adding British Airways as a defendant without making any allegations against British Airways. The first amended complaint also differs by requesting additional damages for prior cases and adding descriptions of several previous cases. Annexed to the first amended complaint is another document labeled amended complaint (the "annexed amended complaint") (Docket No. 7) whose factual allegations differ substantially from both the original complaint and the first amended complaint. The annexed amended complaint also [*5] adds British Airways as a party but specifies only that Pourzandvakil has travelled on that airline and that British Airways, along with other airlines on which Pourzandvakil has travelled, is aware of all the crimes committed against her.

Pourzandvakil filed yet another amended complaint

on January 13, 1995 (the "second amended complaint") (Docket No. 11). The second amended complaint adds as defendants several banks, other financial institutions, insurance companies, insurance agents or brokers, attorneys and airlines as well as the Postmaster of Olmsted County and Western Union. The allegations against these defendants defy easy summarization and will be addressed only insofar as they are relevant to the various motions.

The Clerk of the Court has entered default against the following defendants: J.C. Penny Insurnce (*sic*) [2] ("J.C. Penney"), British Airways, Kowate (*sic*) Airline ("Kuwait"), MSi Insurnce (*sic*) ("MSI"), Judge Mork, Steven Youngquist ("Youngquist"), Prudncial Insurnce (*sic*) ("Prudential"), Ford Motor Credit ("Ford"), First Bank Rochester, and TCF Bank ("TCF"). Based on the submissions Pourzandvakil made in support of her requests for entry of default, [*6] it appears that she served these defendants by certified mail.

The court has received answers from the following defendants: Hubert H. Humphrey III, St. Peter Regional Treatment Center, and Drs. Gerald H. Gammell, William D. Erickson, and Thomas R. Stapleton (joint answer filed January 9, 1995); Olmsted County, Ray Schmitz ("Schmitz"), Susan Mundahl ("Mundahl"), C.O. Brown Agency, Inc. ("C.O. Brown") (answer to amended complaint filed January 23, 1995); George Restovich ("Restovich") (answer to complaint or amended complaint filed January 30, 1995); Norwest Corporation ("Norwest") (answer to amended complaint filed January 31, 1995, amended answer of Norwest Bank Minnesota, N.A. to amended complaint filed February 13, 1995); Travelers Insurance Company ("Travelers") (answer filed February 1, 1995); Michael Benson ("Benson") (answer filed February 6, 1995); Hirman Insurance ("Hirman") (answer filed February 6, 1995); Richard Maki ("Maki") (answer to complaint or amended complaint filed February 17, 1995); Western Union (answer filed February 21, 1995); Steven C. Youngquist ("Youngquist") (answer to complaint or amended complaint filed February 23, 1995); Kuwait (answer filed March [*7] 6, 1995); J.C. Penney (answer filed March 22, 1995); Susan E. Cooper [3] (answer to amended complaint filed March 24, 1995); and Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen and Judge Lawrence Collins (joint answer filed April 3, 1995).

2    Plaintiff's spelling is idiosyncratic, and we preserve the spelling in its original form only where absolutely necessary for accuracy of the record. Otherwise we substitute the word we believe plaintiff intended for the word she actually wrote, e.g., "tortured" for "tureared."

The court has also received a total of ten motions from Pourzandvakil since February 27, 1995. She moved for a default judgment against defendants J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways, and TCF. She moved for immediate trial and "venue in a different place" against several defendants and also requested action according to law and criminal charges. Finally, she made motions opposing defendants' motions.

3    Susan E. Cooper is not named as a defendant in the original complaint or any amended complaint filed with this court. From correspondence with Cooper's attorney, it appears that plaintiff sent Cooper a copy of a different version of the complaint. Because the original of this version was not filed with the court, no action against Cooper is pending in this court.

[*8]    The court also has received a total of thirteen motions [4] from defendants. Several of the defendants moved for dismissal either under Rule 56 or *Rule 12 of the Federal Rules of Civil Procedure*. For instance, Commercial Union Insurance Companies ("Commercial") moved for dismissal of Pourzandvakil's complaint pursuant to *Fed. R. Civ. P. 12(b)* or, in the alternative, for a more definite statement. Commercial argued that Pourzandvakil's complaint against it is barred by *res judicata* and collateral estoppel and that this court does not have subject matter jurisdiction over the complaints against Commercial. American States Insurance Company ("ASI") moved for dismissal based on plaintiff's failure to state a claim upon which relief can be granted. ASI further moved for an order enjoining Pourzandvakil from further litigation against it. Maki moved for summary judgment based on lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim upon which relief can be granted, and lack of subject matter jurisdiction. Hubert H. Humphrey, III, the Judicial System of the State of Minnesota, Judge James L. Mork, St. Peter Regional Treatment Center and Drs. Gammell, Erickson [*9] and Stapleton (collectively, the "state defendants") moved for summary judgment alleging lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim on which relief can be granted, lack of subject matter jurisdiction, sovereign immunity, and, on behalf of Judge Mork and the judicial system, absolute judicial immunity. The state defendants also requested costs and attorney's fees. Travelers moved for summary judgment based on *res judicata* and/or collateral estoppel, frivolity, lack of subject matter jurisdiction, and improper venue. Travelers sought a transfer of venue to Minnesota in the alternative. Hirman moved for summary judgment based on frivolity, lack of subject matter jurisdiction, and improper venue. Hirman also sought transfer of venue in the alternative. Olmsted County, Schmitz, Mundahl, C.O. Brown and Norwest sought dismissal based on lack of personal jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. With respect to

Schmitz and Mundahl, defendants sought dismissal based on absolute prosecutorial immunity, and with respect to C.O. Brown, defendants sought dismissal on *res judicata* grounds. [*10] Metmor Financial, Inc. ("Metmor") sought dismissal based on lack of personal jurisdiction, lack of subject matter jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. Finally, Restovich moved for dismissal based on lack of personal jurisdiction. [5]

> 4   The court has also received three additional motions returnable May 22, 1995. The first -- from Judges Davies, Klaphake, Challeen, Collins and Chief Judge Simonett requests summary judgment dismissing the complaint based on lack of personal jurisdiction. The second by Western Union also requests summary judgment based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. The third, by British Airways, also requests dismissal based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. All three motions are mooted by this memorandum-decision and order which dismisses the complaint in its entirety against nonmoving defendants for failure to state a claim on which relief can be granted.

> 5   The court also received an affidavit and memorandum of law in support of summary judgment from J.C. Penney. However, the documents were not accompanied by a notice of motion.

[*11] Four defendants, British Airways, Kuwait, Prudential, and Youngquist, sought vacatur of the defaults entered against them. Prudential coupled its request with a request for an order enjoining plaintiff from filing or intervening in any litigation against Youngquist also requested dismissal of the complaint based on lack of personal jurisdiction and lack of subject matter jurisdiction.

## ANALYSIS

### The Defaults

We vacate the defaults entered in this matter because plaintiff improperly served defendants. Each application for entry of default shows service by certified mail, which is not permitted by relevant federal, New York or Minnesota rules. [HN1] Under the Federal Rules of Civil Procedure, service on an individual may be made by (1) delivery to the named defendant; or (2) delivery to a person of suitable age and discretion at the defendant's dwelling house or usual place of abode; or (3) delivery to an agent authorized by law or by the defendant to receive service of process. *Fed. R. Civ. P. 4(e)(2).* Service on an individual also can be accomplished through a method authorized by the state in which the district court sits or in which the individual is located. *Fed.* [*12] *R. Civ. P.*

*4(e)(1).* [HN2] Service on a corporation may be accomplished in a judicial district of the United States (1) pursuant to a method authorized by the law of the state in which the court sits or in which the corporation is located; or (2) by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by statute to receive service and, if the statute so requires, by also mailing a copy to the defendant. *Fed. R. Civ. P. 4(h)(1) and 4(e)(1).* [HN3] Neither New York nor Minnesota law authorizes personal service on an individual or corporation by certified mail. *See N.Y. Civ. Prac. L. & R. §§ 308, 311* (McKinney Supp. 1995); *N.Y. Bus. Corp. Law § 306* (McKinney Supp. 1995); *Minn. Stat. § 543.08* (1995); Minn. R. 4.03 (1995). Finally, [HN4] service on states, municipal corporations or other governmental organizations subject to suit can be effected by (1) delivering a copy of the summons and complaint to the state's chief executive officer; or (2) pursuant to the law of the state in which the defendant is located. *Fed. R. Civ. P. 4(j)(2).* Minnesota law does not authorize service on a governmental entity by certified mail. *See* Minn. [*13] R. 4.03(d) and (e) (1995).

We therefore grant the motions by British Airways, Prudential, Kuwait, and Youngquist to vacate the defaults entered against them based both on the defective service and also on the meritorious defenses discussed below. We vacate *sua sponte* the entries of default against MSI, Ford, First Bank Rochester and TCF, all of whom were served improperly and preserved the service issue by raising it or declining to waive it. Concomitantly, we deny Pourzandvakil's motion for a default judgment against J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways and TCF. We vacate *sua sponte* the entry of default against J. C. Penney, which preserved the issue of service in its answer. By moving to dismiss or for summary judgment without raising the issue of service, Judge Mork may have waived the service issue. However Judge Mork objected to personal jurisdiction as inconsistent with due process and otherwise presented meritorious defenses. We therefore treat his motion for summary judgment as including a motion to vacate the entry of default and accordingly grant it.

## II. The Jurisdictional Arguments

In addition to raising various [*14] other grounds for dismissal, such as plaintiff's failure to state a claim on which relief can be granted and *res judicata,* most of the moving defendants urge (1) that this court lacks jurisdiction over either their persons or the subject matter of the controversy or (2) that this action is improperly venued. As we must, we examine jurisdiction and venue first.

### A. Personal Jurisdiction

Maki, the state defendants, Olmsted County,

Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich and Younquist each allege that this court cannot exercise personal jurisdiction over them consistent with due process constraints. In support of their motions, these defendants present affidavits showing that they have had no significant contacts with the state of New York relevant to this lawsuit and that their contacts with Pourzandvakil all occurred in Minnesota. Nothing in plaintiff's voluminous submissions links any of these defendants with New York. [HN5] Plaintiff's extraterritorial service of process can be effective only under any of the following circumstances: (1) if defendants could be subjected to the jurisdiction of a court of general jurisdiction in New York State; (2) if the defendant [*15] is subject to federal interpleader jurisdiction; (3) if the defendant is joined pursuant to *Rule 14* or *Rule 19 of the Federal Rules of Civil Procedure* and is served within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; (4) if a federal statute provides for long-arm jurisdiction; or (5) if plaintiff's claims arise under federal law and the defendants could not be subject to jurisdiction in the courts of general jurisdiction in any state of the United States. *Fed. R. Civ. P. 4(k)*. Defendants are not subject to federal interpleader jurisdiction and they were not joined pursuant to *Rule 14* or *Rule 19*. In addition, no federal long-arm statute is argued as a basis for jurisdiction, and the moving defendants all would be subject to jurisdiction in Minnesota. Therefore, we must look to New York's long-arm statute to determine whether plaintiff's extraterritorial service of process could be effective under the one ground remaining pursuant to *Rule 4(k). See N.Y. Civ. Prac. L. & R. § 302* (McKinney Supp. 1995). [HN6] This rule provides that in order to obtain jurisdiction over a non-domiciliary, the plaintiff must show both certain [*16] minimal contacts between the defendant and the state (such as transacting any business in the state) and that the harm plaintiff suffered springs from the act or presence constituting the requisite contact. *Id. § 302(a)*. The moving defendants have demonstrated that plaintiff does not claim harm stemming from acts or contacts within the purview of *Section 302(a)*. Therefore, we grant these defendants' motions to dismiss the complaint for lack of personal jurisdiction.

## B. Subject Matter Jurisdiction

Pourzandvakil's complaint does not contain the jurisdictional allegations required by *Fed. R. Civ. P. 8(a)(1)*. Several defendants move for dismissal based either on this pleading defect or on an affirmative claim that no subject matter jurisdiction exists. Commercial, Travelers and Hirman (collectively, the "moving insurance companies") moved for dismissal because plaintiff has not pled the complete diversity of citizenship required for subject matter jurisdiction. The

state defendants, relying on *District of Columbia Court of Appeals v. Feldman,* argue that we lack subject matter jurisdiction over any issue that was determined in a state court proceeding to which plaintiff [*17] was a party. *District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482, 75 L. Ed. 2d 206, 103 S. Ct. 1303 (1983)*. These issues include plaintiff's hospitalization at St. Peter Regional Treatment Center. Finally, Metmor also moved for dismissal based on lack of subject matter jurisdiction because plaintiff has failed to plead a jurisdictional basis.

The moving insurance companies note correctly that insofar as the claims against them can be deciphered, plaintiff states that Traveler's and Commercial did not pay for damages to Pourzandvakil's property, harassed her and cancelled her policy. Pourzandvakil does not mention Hirman in her complaint, but Hirman's attorney states that Pourzandvakil informed him in a telephone conversation that her complaint against Hirman stemmed from actions it took as an agent of Travelers in denying Pourzandvakil's 1985 property damage claim.

The moving insurance companies argue that this court has no jurisdiction over the state insurance law claims absent complete diversity of citizenship between plaintiff and the defendants. *28 U.S.C. § 1332*. They point out that plaintiff lists a Syracuse, New York address for herself and that Kuwait's [*18] address as listed in the complaint is also in New York. Therefore, they argue, there is no complete diversity and this court lacks subject matter jurisdiction absent a basis for pendent jurisdiction under *28 U.S.C. § 1367(a). Section 1367(a)* [HN7] requires a relationship between the state and federal claims so that "they form part of the same case or controversy." *Id.* Because plaintiff's claims of denial of insurance coverage bear no apparent relationship to her other claims of rape, torture, harassment and kidnapping, we do not believe that an adequate basis for supplemental jurisdiction exists. *Id.* Plaintiff's complaint therefore shows no basis for subject matter jurisdiction against the moving insurance companies, and we dismiss as against them. [6]

> 6   We ordinarily would offer plaintiff an opportunity to amend her complaint because her submissions and Kuwait's answer indicate two bases on which plaintiff might be able to argue diversity of citizenship. First, although plaintiff lists her address in Syracuse, New York, she also has indicated on the civil cover sheet that she is an Iranian Citizen and we are not aware of her residence status. As a permanent resident, she would be deemed a citizen of the state in which she resides. *28 U.S.C. § 1332(a)*. However, if she lacks permanent resident status, her citizenship would be considered diverse from that of all the defendants. *Id. § 1332(a)(2)*. Second, Kuwait has submitted an answer in which it claims to be a foreign state within the meaning of *28 U.S.C. §*

*1603*. If Kuwait is correct, plaintiff may have an independent basis for jurisdiction over Kuwait. *See 28 U.S.C. § 1330*. If Pourzandvakil could show subject matter jurisdiction over Kuwait without resort to diversity of citizenship, then Kuwait's residence in New York may not be relevant to the issue of whether this court has diversity jurisdiction under *Section 1332*. Cf. *Hiram Walker & Sons, Inc. v. Kirk Line, 877 F.2d 1508, 1511-1512 (11th Cir. 1989), cert. denied, 131 L. Ed. 2d 219, 115 S. Ct. 1362 (1995)* (holding that the joinder of a non-diverse defendant sued under federal question jurisdiction did not destroy diversity as to the remaining defendant). Here, however, plaintiff's complaint is subject to so many other meritorious defenses -- including complete failure to state a cause of action -- that an amendment would be an exercise in futility. Additionally, plaintiff has not requested permission to amend, proffered an amended pleading, or indeed even supplied an affidavit stating her residency status or alleging a basis of jurisdiction over her claims against Kuwait other than diversity under *28 U.S.C. § 1332*.

[*19] We also agree with the state defendants that state court decisions may render certain of plaintiff's claims against them unreviewable either because of *res judicata* or lack of subject matter jurisdiction. However, because plaintiff's claims are so generally stated and so lacking in specifics, we are unable to discern at this juncture what parts of her complaint would be outside the jurisdiction of the court. In any case, we already have determined that the state defendants are clearly entitled to dismissal on personal jurisdiction grounds. As for Metmor, we believe that plaintiff may be attempting to state a civil rights claim by alleging a conspiracy to murder in connection with a judge although she fails to articulate an actionable claim. We note that we already have determined, in any case, that Metmor is entitled to dismissal on personal jurisdiction grounds.

## C. Venue

Metmor, Travelers, Maki, Hirman, Norwest, Olmsted County, C.O. Brown, Schmitz and Mundahl also allege that Pourzandvakil's action is not properly venued in this court. Although these defendants are entitled to dismissal on independent grounds, improper venue also would support dismissal as to these defendants. [*20] The general venue statute provides that a diversity action, except as otherwise provided by law, may be brought only in

[HN8] (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

*28 U.S.C. § 1391(a). Section 1391(b)* provides that federal question actions, except as otherwise provided by law, may be brought only in

[HN9] (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

[*21] *Id. § 1391(b)*. The majority of the defendants in this action are residents of Minnesota and all of the events of which Pourzandvakil complains occurred in Minnesota. No defendant resides in the Northern District of New York, and none of the conduct plaintiff complains of, occurred in this district. Therefore, venue in the Northern District of New York is clearly improper. [HN10] Where venue is laid in the wrong district, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Id. § 1406(a)*. Because, as we will explain below, Pourzandvakil's complaint not only fails to state a claim upon which relief can be granted but is also frivolous, we do not deem it to be in the interest of justice to transfer this case to another district. [HN11] The purpose of the court's discretionary authority to transfer rather than dismiss in cases of improperly laid venue is "to eliminate impediments to the timely disposition of cases and controversies on their merits." *Minnette v. Time Warner, 997 F.2d 1023, 1027 (2d Cir. 1993)* (holding that it was an improper exercise of discretion to dismiss rather than transfer [*22] when the statute of limitations on a timely filed complaint ran between filing and dismissal). In this case, as discussed below, a review of the complaint and the plaintiff's submissions on these motions indicates that her claims are frivolous. We therefore dismiss as to the moving defendants both on venue grounds and on the other grounds already identified as applicable. We note also that plaintiff has made claims similar to those in this action against many of the same defendants in the United

States District Court for the District of Minnesota. *Pourzandvakil v. Price,* Civ No. 4-93-207 (D.Minn. 1993). This action was dismissed by Order to Show Cause entered April 12, 1993.

## III. Failure to State a Claim on Which Relief Can be Granted and Frivolity

Defendants ASI, Travelers, Hirman, Norwest, C.O. Brown, Olmsted County, Schmitz, Mundahl, Prudential, Metmor, and Youngquist as well as the state defendants have attacked the sufficiency of plaintiff's complaint. Travelers and Hirman urge that the complaint is frivolous while the remaining defendants argue only that the complaint fails to state a claim upon which relief can be granted. *Fed. R. Civ. P. 12(b)(6).* [7] [HN12] We already [*23] have dismissed against all the moving parties except ASI on jurisdictional grounds and therefore have the power to address the *Rule 12(b)(6)* issue only on ASI's motion. *See Bell v. Hood, 327 U.S. 678, 682-83, 90 L. Ed. 939, 66 S. Ct. 773 (1946)* (subject matter jurisdiction); *Arrowsmith v. United Press Int'l, 320 F.2d 219, 221 (2d Cir. 1963)* (personal jurisdiction). We grant ASI's motion and note in passing that were we empowered to reach the merits regarding the remaining moving defendants, we also would dismiss the complaint against them for failure to state a claim upon which relief can be granted. We also dismiss *sua sponte* as frivolous the complaint against all defendants who have not been granted dismissal previously on jurisdictional grounds.

> 7    J.C. Penney also submits an affidavit requesting dismissal on this basis and others, but has not filed or served a notice of motion.

Pourzandvakil has not specified a statutory or constitutional basis for her claims against ASI or any of the other [*24] defendants. She alleges that certain of the insurance company defendants denied her claims for damages without alleging that the denial was in any respect wrongful. She also alleges in general terms that the defendants harassed, tortured, kidnapped and raped her and perhaps were involved in a murder plot but does not supply (1) the dates on which these actions occurred, except to say that they began in 1984 and 1985; (2) the names of the specific defendants involved in any particular conduct; or (3) a description of any particular conduct constituting the harassment, torture or kidnapping. She suggests without further detail that ASI was involved in a plot to murder her by placing her in the Mayo Clinic. Although plaintiff does not allege specific constitutional provisions or statutes that defendants have violated, we assume -- largely because many of the defendants involved are state officials or state employees and she appears to complain of certain aspects of various trials -- that she wishes to complain of violations of her civil rights. [HN13] Complaints that rely on civil rights statutes are insufficient unless "they contain some specific allegations of fact indicating a deprivation [*25]

of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987).* [HN14] A *pro se* plaintiff's complaint must be construed liberally and should be dismissed only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble, 429 U.S. 97, 106, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976)* (quotation omitted). Pourzandvakil has not satisfied even this minimal test; her complaint and submissions on this motion demonstrate that she cannot prove any set of facts in support of her claim which would entitle her to relief. Her complaint consists of a "litany of general conclusions" rather than "specific allegations of fact". *Barr, 810 F.2d at 363.*

Ordinarily we would allow plaintiff an opportunity to replead to state specific allegations against ASI, but three factors militate against this course of action. First, our December 22, 1994, Memorandum - Decision and Order denying plaintiff's request for a temporary restraining order indicated that she had not shown a likelihood of success on the merits of her claim because she had not [*26] pled any specific actionable facts. Despite the fact that plaintiff since has filed three amended complaints, she still fails to set forth specific actionable conduct. Second, the defendants' motions themselves have alerted plaintiff to the need to show specific actionable facts, and yet her voluminous submissions in opposition to the motions contain no specific actionable facts. Finally, plaintiff has asserted similar allegations against many of the same defendants sued in this action -- although not ASI -- as well as others in several different jurisdictions. *See Pourzandvakil v. Blackman,* [8] Civ. No. 94-C944 (D.D.C. 1994), *Pourzandvakil v. Doty* (E.D.N.Y. 1993), *Pourzandvakil v. Price,* Civ. No. 7 (D.Minn. 1993). Where the results are known to us these actions resulted in dismissals for failure to state a claim upon which relief can be granted. *Pourzandvakil v. Price,* Civ. No. 4-93-207, Order to Show Cause entered April 12, 1993; *Pourzandvakil v Blackman,* Civ. No. 94-C-94, Order entered April 28, 1994, *aff'd* Civ. No. 94-5139 (D.C. Cir. 1994) (per curiam). In the Minnesota case, dismissal took place after the district court offered plaintiff an opportunity to [*27] amend her pleading and plaintiff still was not able to offer specifics. [9] [HN15] Even *pro se* complaints must show "some minimum level of factual support for their claims." *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, (quoting *White v. White, 886 F.2d 721, 724 (4th Cir. 1989)).* We therefore dismiss plaintiff's complaint against ASI for failure to state a claim upon which relief can be granted. *Fed. R. Civ. P. 12(b)(6).*

> 8    Former Supreme Court Justice Harry A. Blackmun.
> 9    We note also that plaintiff has not requested leave to amend in this action.

We note that in *Pourzandvakil v. Blackman,* Judge John H. Pratt dismissed plaintiff's *in forma pauperis* complaint *sua sponte* under *28 U.S.C. § 1915(d),* holding both that it failed to state a claim on which relief can be granted and that it was frivolous. We consider here whether we have the authority to dismiss *sua sponte* plaintiff's complaint, which was not filed *in forma pauperis,* as frivolous as against all non-moving defendants. [*28] [HN16] The Supreme Court explicitly has acknowledged a district court's power under *Section 1915(d)* to dismiss as frivolous a complaint which "lacks an arguable basis either in law or in fact." *Neitzke v. Williams, 490 U.S. 319, 325, 104 L. Ed. 2d 338, 109 S. Ct. 1827 (1989).* The Supreme Court explicitly declined to rule, however, on whether a district court has the authority to dismiss *sua sponte* frivolous complaints filed by non-indigent plaintiffs. *Id. at 329 n.8.* The law in this circuit is that a district court may *sua sponte* dismiss a frivolous complaint even if the plaintiff has paid the filing fee. *See Tyler v. Carter, 151 F.R.D. 537, 540 (S.D.N.Y. 1993), aff'd 41 F.3d 1500 (2d Cir. 1994); cf. Pillay v. I.N.S., 45 F.3d 14, 17 (2d Cir. 1995) (per curiam)* (dismissing *sua sponte* appeal for which appellant had paid normal filing fee). We believe that *sua sponte* dismissal is appropriate and necessary here because (1) plaintiff's claims lack an arguable basis in law and fact; (2) plaintiff has repeatedly attempted to replead her claims without being able to articulate actionable conduct; (3) some of plaintiff's claims have been tested in other courts [*29] and found to be without merit; and (4) the issue of frivolity has been presented by at least some of the moving defendants.

We therefore dismiss with prejudice plaintiff's complaint as frivolous as to all defendants -- regardless of whether they have moved for dismissal -- that have not been granted dismissal on jurisdictional grounds. We direct the clerk to return plaintiff's filing fee to her. *Tyler, 151 F.R.D. at 540.*

## IV. Requests for Sanctions, Costs, Attorney's Fees and Injunction Against Filing Further Actions

Because plaintiff is *pro se* and appears to have a belief in the legitimacy of her complaint, we do not believe that the purpose of Rule 11 would be served by awarding sanctions. *See Carlin v. Gold Hawk Joint Venture, 778 F. Supp. 686, 694-695 (S.D.N.Y. 1991).* Moreover, her litigiousness has not yet reached the point

at which courts in this circuit have justified injunctive relief. *See id. at 694* (and collected cases). We therefore deny the requests of ASI and Prudential for injunctive relief. Our refusal to grant sanctions and injunctive relief however, is conditioned on this dismissal putting an end to plaintiff's attempts to sue these defendants [*30] on these claims in this forum. Any further attempts by plaintiff to revive these claims will result in our revisiting the issue of sanctions. *Id. at 695.*

## CONCLUSION

All defaults entered by the clerk are vacated. Plaintiff's complaint is dismissed in its entirety against all moving and non-moving defendants. The dismissal of the complaint against Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich, Youngquist, Commercial, Travelers and Hirman is without prejudice as it is premised on this court's lack of power either over the person of the defendant or the subject matter of the controversy. *See Voisin's Oyster House, Inc. v. Guidry, 799 F.2d 183, 188-9 (5th Cir. 1986)* (dismissal for lack of subject matter jurisdiction is not a dismissal on the merits); *John Birch Soc'y. v. National Broadcasting Co., 377 F.2d 194, 199 n.3 (2d Cir. 1967)* (dismissal for lack of subject matter jurisdiction implies no view of merits); *Orange Theatre Corp. v. Rayherstz Amusement Corp., 139 F.2d 871, 875* (3d Cir.) *cert. denied, 322 U.S. 740, 88 L. Ed. 1573, 64 S. Ct. 1057 (1944)* (dismissal for lack of personal jurisdiction is not [*31] a dismissal on the merits). The dismissals against the remaining defendants are with prejudice. All requests for sanctions and attorney's fees are denied. The requests of defendants ASI and Prudential for an injunction with respect to future litigation is denied. However, plaintiff is cautioned that any litigation in this forum attempting to revive the claims addressed herein may subject her to sanctions. Plaintiff's motions are denied as moot.

IT IS SO ORDERED.

DATE: May 22, 1995

Syracuse, New York

ROSEMARY S. POOLER

UNITED STATES DISTRICT JUDGE